PULASKI HIGHWAY EXPRESS, INC.,
et al., Appellees,

v.

**Winfield DUNN et al., Appellants.**

Supreme Court of Tennessee.

May 19, 1975.

Rehearing Denied June 30, 1975.

Everett H. Falk, Asst. Atty. Gen., Eugene W. Ward, T. E. Midyett, Jr., Nashville, for appellants.

Richard H. King, Nashville, for appellees.

OPINION

HARBISON, Justice.

In this case the issue is presented as to whether the Public Service Commission may properly include the value of leased vehicles in making the annual ad valorem tax assessment of motor carriers operating in the state. Only the assessment for the tax year 1972 is involved, because the pertinent statutes were revised in 1973, so as to provide in unmistakable terms that leased vehicles should be considered utility proper-

ty and should be taxed ad valorem to the lessee of the equipment. T.C.A. §§ 67–601(7), 67–602(5), 67–901 (1974 Supp.).

Prior to the 1973 legislation, the taxation of motor carriers, particularly that of non-resident irregular route carriers, had had a varied history, involving several amendments to the taxing statutes, and considerable litigation. It is necessary for a decision of the issues presented here to discuss some of this history and some of the cases on the subject.

This case reached the courts by petition for certiorari from the State Board of Equalization. Pursuant to the provisions of T.C.A. § 67–901 et seq., the Tennessee Public Service Commission made the ad valorem assessment of the distributable properties of the motor carriers involved, for the year 1972. Included in these assessments was the value of equipment which was being leased by the carriers and used as a part of their operations, under certificates of convenience and necessity issued by the Tennessee Public Service Commission or the Interstate Commerce Commission. The State Board of Equalization reviewed the assessments, and made some modifications therein which are not pertinent to the issues involved, and from the revised assessments the motor carriers filed a petition for certiorari to the Chancery Court of Davidson County. The assessments were challenged insofar as they included the value of leased equipment. The chancellor held the assessments illegal and void, concluding that under the pertinent statutes the Public Service Commission did not have authority to include leased vehicles in the ad valorem assessment of the carriers. The Public Service Commission and the Board of Equalization have appealed that decision to this Court.

The record in this case does not contain any depositions or other testimony. The taxpayers relied upon written exceptions which they filed to their assessments before the Public Service Commission, and upon statement of counsel before the Board of Equalization. The Public Service Commission also relied upon unsworn statements of its staff members or statements of counsel, together with written exhibits. No samples of any vehicle leases were filed in evidence, nor is there any testimony supporting many of the factual statements made in the briefs as to the method or manner of leasing involved. At one point in the briefs of the taxpayers, it is stated that all of the leases involved were at arm's length and for full value. Before the Board of Equalization, however, counsel for the taxpayers stated that many of the carriers had formed their own leasing companies as subsidiaries or affiliated corporations, and that in the case of some of the carriers, all of their operating equipment was leased from such affiliates.

■ On the part of the Public Service Commission, there are statements in the briefs and statements made before the administrative agencies below concerning past practices of the Commission, and concerning their method of assessing leased equipment so as to insure that double taxation did not occur. Again, however, there is no testimony of any witness supporting any of these allegations or statements, and this Court finds itself unable to review any of the factual assertions made by either side because of the absence of a record supporting the allegations. There are no stipulations of fact contained in the record, and in the absence of either evidence or stipulations, this Court can only review the legal issues presented, together with the few facts which are admitted in the pleadings. Ample opportunity was afforded all parties concerned to offer testimony both before the Public Service Commission and the Board of Equalization, and neither side availed itself of that opportunity.

Under some circumstances the Court might consider statements of counsel, if uncontradicted. In this case, however, even the statements of counsel are conflicting.

For example, it is asserted by counsel for the Public Service Commission that at all times prior to 1968 the Commission did include leased properties in its annual assessments. Counsel for the carriers, however, states that at no time prior to 1969 was any such leased property ever so assessed. There is language in at least one reported opinion, to which reference will hereinafter be made, which lends some support to the statement of counsel for the Commission. This Court, of course, has no way of knowing what the practice of the Commission was without testimony being offered, except such as it has been able to glean through independent research in the reported decisions.

For many years prior to the tax year in question, the state statutes had provided that the Public Service Commission (formerly designated as the Railroad and Public Utilities Commission) should assess for taxation for state, county and municipal purposes "all of the properties of every description, tangible and intangible, within the state, belonging to the following named persons, hereinafter referred to as companies . . ." Williams Tenn.Code Ann. § 1508; T.C.A. § 67–901 (prior to the 1973 revision).

Much emphasis is placed in the present case upon the phrase "belonging to" which was found in the previous statutes. In the 1973 revision, this phrase was deleted, and the section now refers to all of such properties "owned by and all personal property used and/or leased by" the various companies listed therein.

It is insisted on behalf of appellees that the phrase "belonging to" meant only property owned outright by the utility companies referred to in the previous statutes. Certainly the phrase "belonging to" may mean absolute ownership, but it also may mean a property right or interest less than absolute title. For example, it certainly would include properties held by the vendee under a conditional sales contract, or property possessed by a mortgagor on which there was an outstanding chattel mortgage. In the opinion of this Court, it could also include leased property as well as owned property. The phrase has been construed in other states in a number of contexts, and in many cases it has been held that property may "belong to" an entity which has less than full title.

For example in the case of *Baltimore Dry Docks & Ship Bldg. Company v. N. Y. & P. R. S. S. Co.*, 262 F. 485 (4th Cir. 1919), a ship was held to "belong to" the United States Government, even though the government simply held the ship under a charter arrangement and was not the owner thereof. Likewise, in the case of *Board of Supervisors of Wythe County v. Medical Group Foundation, Inc.*, 204 Va. 807, 134 S.E.2d 258 (1964), property was held to "belong to" a charitable corporation for purposes of a tax exemption, even though the corporation only leased the land and buildings involved.

We do not, therefore, consider that the phrase "belonging to" in the previous versions of the statutes to be conclusive or dispositive of the issue presented here.

The statutes above referred to listed various kinds of utility companies which were subject to assessment by the Commission, and prior to 1957, subsection 12 simply described motor carriers subject to such assessments as:

"motor bus and/or truck".

The Commission asserts that prior to 1957, it had always included leased equipment in the assessment of truck and bus lines, but, as previously pointed out, there is no evidence of this, and the assertion seems to be disputed by counsel for the motor carriers presently involved.

In all events, in 1957 subsection 12 of the assessment statute was rewritten, and by Chapter 191 of the Public Acts of 1957 the subsection was amended to read as follows:

"Motor bus and/or truck companies, which shall be deemed to include every

motor carrier operating within, into and/or through the State of Tennessee, under and by virtue of any certificate of convenience and necessity, permit or other operating authority, granted by the Tennessee Public Service Commission under provisions of Title 65, Chapter 15, Tennessee Code Annotated . . ."

Several suits were instituted challenging the constitutionality of this amendment by irregular route, nonresident motor carriers operating in the state, whose property had not theretofore been subjected to ad valorem taxation. The constitutionality of the 1957 amendment was upheld in the following cases: *Howard Sober, Inc. v. Clement,* 52 Tenn.App. 115, 372 S.W.2d 202 (1960); *Jack Cole Company v. Ellington,* 52 Tenn. App. 120, 372 S.W.2d 204 (1961), and *E & L Transportation Company v. Ellington,* 212 Tenn. 671, 371 S.W.2d 456 (1963).

In the case last cited, this Court discussed the contention of the motor carriers before it. The Court said:

"They say they are foreign corporations engaged in business as irregular route motor carriers having no tangible property at any fixed location or locations within Tennessee. The only properties which they have in this State at any time are owned *or leased* trucks operating into and through Tennessee in interstate commerce over irregular routes on a nonschedule basis to the extent that demands for their services require and they are, therefore, exempt from the taxes assessed." 212 Tenn. at 673, 371 S.W.2d at 457. (Emphasis added.)

An examination of the complaint and of the briefs filed in that case reveals that leased equipment was included in the assessments then under consideration. The authority of the Commission to assess it was expressly challenged. Although the point was not separately discussed by the Court, the entire assessments were sustained. The Court held, as the Court of Appeals had held in the two cases cited

above, that the provisions of the 1957 statute were constitutional, and that they did authorize the taxation ad valorem in Tennessee of properties of such nonresident motor carriers, even though the particular units or properties involved might be in the state only at irregular intervals.

In the case before the Supreme Court, in addition to reiterating their contentions which had been made in the Court of Appeals, the carriers also insisted that the imposition of the tax upon property of irregular route carriers amounted to double taxation. Since this contention is vigorously made in the case presently before us, it should be noted that in the *E & L Transportation Company* case, *supra,* the Tennessee Supreme Court rejected the contention. The Court pointed out that double taxation itself is not proscribed by the Tennessee Constitution in the first place, but the Court found that in fact there was no double taxation on the properties in question under the procedures used by the Public Service Commission at the time of the 1963 decision. 212 Tenn. at 675–678, 371 S.W.2d 456.

■ There has been offered no evidence whatever in the record before us that the 1972 assessment has resulted in double taxation of any properties. While we do not think that the legislature intended that double taxation should occur, nevertheless this Court cannot presume that such has occurred in the absence of some testimony or other evidence to that effect.

Following the 1957 amendment to the statutes, which amendment was upheld by the courts as pointed out above, the Public Service Commission apparently continued to tax ad valorem the distributable properties of irregular route carriers until 1968. By Chapter 459 of the Public Acts of 1968, subsection 12 was again rewritten, the previous language being deleted and the following substituted therefor:

"Motor bus and/or truck companies, domiciled in this State and/or owning

real or personal property located in this State."

Litigation was instituted to determine the meaning and effect of this amendment in the Chancery Court at Nashville, and this litigation reached the Court of Appeals, Middle Section, which rendered an unreported decision in the case of *Atkins, et al. v. Alterman Transport Lines, Inc., et al.*, on August 29, 1969. This suit had originated as a declaratory judgment action, and the chancellor had held that the 1968 amendment to the taxing statutes was constitutional, and that it governed the assessment of motor carriers for the taxable year 1968. The chancellor further held that "There is no provision under Chapter 459 for the assessment of ad valorem taxes by the Tennessee Public Service Commission to the lessee of property leased to and operated by motor carriers."

The Court of Appeals affirmed the decision of the chancellor as to the constitutionality of the statute, and as to its governing the assessment for the tax year 1968. The court held that under the amended statute, nonresident irregular motor route carriers were no longer subject to ad valorem taxation in Tennessee unless they owned property in the state.

In its opinion, the Court of Appeals stated that pursuant to T.C.A. §§ 65–1519 and 59–436, the Commissioner of Revenue of Tennessee had entered into certain reciprocal agreements with other states with regard to the inspection and supervision of interstate vehicles. The court stated that Tennessee "was the only one of these States that required payment of ad valorem taxes, and the payment of such taxes was required under the provisions of Chapter 191, of the Public Acts of 1957." Because of the Tennessee ad valorem taxation, the State of Florida, in 1967, had notified all Tennessee registered carriers that they would be liable for certain Florida taxes. It was against this background, according to the opinion of the Court of Appeals, that Chapter 459 of

the Public Acts of 1968 was adopted, so as to repeal the 1957 statute authorizing the imposition of ad valorem taxes upon these irregular route carriers.

There was no assignment of error to the Court of Appeals with respect to the portion of the chancellor's opinion dealing with leased equipment, and, therefore, the Court of Appeals did not discuss that issue.

In its opinion the Court of Appeals said:

"The situation which was created when the Governor signed Chapter 459 into law simply changed the status of the property of nonresident carriers, situated outside of the State from property subject to ad valorem tax back to exactly what it was before 1957, namely, property without a fixed situs in Tennessee that would make it subject to ad valorem tax in this state."

The court stated that only by virtue of the 1957 act was the situs of the property of these nonresident carriers fixed in Tennessee. Such situs was established by reason of the fact that these carriers operated under certificates of convenience and necessity issued by the Public Service Commission. The court said:

"Without such legislation, the fixed situs of such carriers' property would not ordinarily be in Tennessee and therefore, in the absence of such enabling legislation, such property not so situated in Tennessee is not considered as taxable property for the purpose of ad valorem taxation."

On behalf of certain local taxing officials who were parties to the litigation, it was urged that the 1968 statute in effect created an "unconstitutional exemption" to certain classes of persons. Because a similar insistence is made in the present case, we quote the following portion of the opinion of the Court of Appeals:

"Our answer to this question is that Chapter 459 does not give a tax exemption to a certain class of persons. As the Supreme Court said in *Southern Express*

*Co. v. Patterson* (122 Tenn. 279, 123 S.W. 353 (1909)) Article 2, Section 28, of the State Constitution is not a self-executing provision and before any property can be valued and assessed for taxation, a proper method and machinery for such valuation and assessment must be provided.

"No tax exemption is involved here, the simple fact is that in 1957, by Chapter 191 of the Public Acts, the General Assembly provided the necessary implementing legislation, establishing a method and machinery for valuation and assessment of property of certain non-resident, irregular route carriers, which property was not theretofore subject to valuation and assessment for ad valorem taxation."

The court held that since the 1957 act had been repealed, the property of these carriers could no longer be reached for taxation.

It was with this background that Chapter 327 of the Public Acts of 1969 was enacted, once again amending subsection 12 of T.C.A. 67–901. It is the construction and effect of this statute which are in issue in the present litigation.

The caption to Chapter 327 of the Public Acts of 1969 is as follows:

"AN ACT to amend Section 67–901, Tennessee Code Annotated, relating to assessment by Public Service Commission, companies included."

In Section 1 of the chapter, subsection 12 was amended by adding the words "or leasing" immediately after the words "or owning", so as to make the subsection read as follows:

"Motor bus and/or truck companies domiciled in this state and/or owning or leasing real or personal property located in this state . . ."

It is conceded by all parties that one of the purposes of this act was to make the property of nonresident irregular route carriers subject to ad valorem taxation in Tennessee, whether the carriers owned property in the state or not. That is, such carriers which operated in this state were subject to ad valorem taxation, even though they only operated leased equipment or otherwise operated in the state without actually owning property or being domiciled therein.

No issue is taken by the appellees that this was one of the purposes of the 1969 legislation, and it is conceded that the language used by the General Assembly was sufficient to accomplish that purpose.

It is insisted by the Public Service Commission, however, that the statute had a further purpose, and that was to authorize the Commission to assess leased properties ad valorem to motor carriers, as well as owned properties. The carriers took exception to this construction by the Commission, and litigation again resulted. An annual assessment made pursuant to the 1969 statute was taken to the Chancery Court of Davidson County for review by petition for certiorari, and on February 16, 1971 Chancellor Frank F. Drowota III held that the 1969 legislation did authorize the Commission to tax leased equipment to the lessee. His memorandum opinion has been filed in the record in this case. In the opinion the chancellor reviewed the legislative history which has been recited above, and concluded that one of the very purposes for the 1969 legislation was to permit such taxation. A petition for rehearing was filed in which it was argued that the Commission could only tax the separate leasehold value of rented equipment, rather than the investment value, and that the interpretation rendered by the court would result in double taxation or in the creation of a new class of exempt persons, in violation of the Tennessee Constitution. The chancellor overruled this petition. An appeal was taken to this Court, but the appeal was dismissed before the case was heard in December 1971.

As previously stated, the present litigation concerns the 1972 assessment of the carriers, the last one prior to the effective

date of the comprehensive statutory revisions of 1973.

In the present case, the Chancellor of Part I of the Chancery Court at Nashville, Hon. Ben H. Cantrell, held that the 1971 proceedings were not res adjudicata for the 1972 tax year and further held that under T.C.A. § 67–901, the Public Service Commission could only tax property actually owned outright by the motor carriers. In other words he held that the 1969 amendment was descriptive of the types of companies which could be taxed, but that it did not contain authority to tax leased equipment to the lessee. He relied upon the phrase "belonging to" contained in the preamble to the statute, and also pointed out that there was no attempt to assess the value of the leasehold separately from the value of the equipment itself. He cited and relied upon *Memphis Peabody Corp. v. MacFarland*, 211 Tenn. 384, 365 S.W.2d 40 (1963), in which this Court, in a privilege tax case, held that a leasehold in real property should be separately valued from the fee.

Although a privilege tax case, the holding in that case was consistent with general assessment statutes then in force, governing local tax assessors, and directing that separate interests in real property be assessed separately. T.C.A. § 67–606(5).[1] It should be noted that this statute has no application to personal property, and the reliance of the carriers on valuations of real estate leaseholds in the present litigation is misplaced.

The chancellor below concluded that the single purpose of the 1969 legislation was to bring within the taxing power of the State nonresident irregular route carriers who merely leased property, but that it did not make the leased property itself subject to ad valorem taxation to the carrier.

Because of the sharply differing interpretations given the statute by the parties, and their differing conclusions as to what the intentions of the legislature may have been, this Court has sought such extrinsic aids to the legislative intent as were available. In the debates on final passage of the bill in the House of Representatives on May 7, 1969, the sponsor of the legislation made the following statement:

"This is a bill that has been requested by the Railroad & Public Service Commission dealing with the assessment of leased property. There has been such a tremendous change in the procedures of the industry with respect to the leasing of property rather than the owning of the property that literally the companies expect to be treated in leasehold property just exactly like they do in ownership, because they have gone to leaseholds more than they have to ownership. So this bill has the effect of permitting the assessment for tax purposes of leasehold property as though it were owned property by the respective companies."

It is well known that as a result of the holding of the Tennessee courts in the case of *Southern Railway Company v. Clement*, 57 Tenn.App. 54, 415 S.W.2d 146 (1966) and related federal decisions, the Tennessee assessment statutes were sweepingly revised in 1967. In order to equalize the assessment ratios being fixed by local tax assessors and those being fixed by the Public Service Commission on utility properties, Chapter 325 of the Public Acts of 1967 and other legislation were adopted. These statutes sought to equalize the lower local assessments with those being made by the Public Service Commission over a period of years, beginning in 1968 and continuing through 1973. See T.C.A. 67–605 (prior to the 1973 amendment).

---

1. Despite these provisions, however, the assessed taxes were then and still are a lien on the fee "and not merely upon the interest of the person to whom said property is or ought to be assessed, but to any and all other interests in said property, whether in reversion or remainder, or lienors, or of any nature whatever." T.C.A. § 67–1803.

In the debates in the House of Representatives on the 1969 legislation, this situation was pointed out, and the sponsor of the 1969 statute now in question pointed out that a number of carriers were leasing equipment, so that the owner could be assessed by local assessors, rather than owning the property, and having it assessed as utility property by the Commission.[2]

■ There is, therefore, no question from the legislative history but that it was the intention of the legislature to make leased equipment assessable to the utilities or carriers using it, instead of leaving it to local assessment. The remaining question is whether the language used was sufficient to carry out that purpose or not.

■ It is the opinion of this Court that the language was sufficient, particularly when taken with other portions of the assessment statutes.

As stated, because of the lack of an evidentiary record, we are deprived of knowledge as to what the past practices of the Public Service Commission had been. For many years, however, the next section of the Code, following the one which is the subject of this opinion, had required the owners of the various utility properties mentioned in the Code section now under consideration "to file with the commission on or before the first day of April, biennially . . . under oath, schedules and statements giving the following information concerning all properties owned or leased by such owners . . ." See Williams Tennessee Code Annotated, § 1509; T.C.A. § 67–902 (prior to the 1973 amendment). It thus appears that, at a minimum, the various utility companies had been required for a very long period of time to report their leased properties. As far as this Court can determine, only the 1968 legislation, as construed in the litigation above referred to, purported to prohibit the taxation of leased equipment to a utility as though it were owned by that utility.

We know of no authority, and none has been cited, to the effect that the General Assembly may not for tax purposes require the assessment and taxation of property to the owner of any limited interest in personal property. How that owner will share the tax burden with other owners of interests in the property is a matter of contract between them. This was pointed out in the record before the Board of Equalization in the present case, and the members of the Board stated that they felt that if leased equipment were taxed at its full value to the lessee, then the matter of the bearing of the tax burden would be worked out between the lessor and the lessee by appropriate rental rates.

This Court is reluctant to hold that the taxing power of the State does not encompass the assessment to a utility of leased equipment operated by it in the exercise of its franchises in the state and, in this instance, upon the highways of the state.

We are unable to follow the argument made by appellees that such a method of assessment in any way involves the creation of an unconstitutional exemption. At issue here is only a mechanism or machinery for the assessment and taxation of property, the location and identification of which would otherwise be difficult to determine. The property is taxed ad valorem, and the respective owners of interests therein may by contract distribute the burden thereof among themselves as they see fit.

As previously stated, we do not believe that the legislature intended double taxation to result from this system, and the statements of the Public Service Commission in the record are to the effect that the Commission itself does not intend such a result and will take appropriate measures to prevent this from occurring. In the 1971

2. This is borne out by statement of counsel for the carriers before the State Board in the present case, that both real and personal property were being taken out of the names of carriers and then leased back "to get the benefit of the lower tax rates."

opinion of the chancery court, the chancellor stated that the record in that case revealed effective procedures and steps taken by the Commission to prevent double taxation.[3]

The carriers concede that under the 1973 legislation, there is no question but that leased property is assessable to them. Other than by the 1968 legislation as construed, we find no prohibition to its being assessed to them in the years prior to 1973. The 1969 legislation, in our opinion, removed any prohibition found to have been created by the 1968 act.

The judgment of the chancellor is reversed and the suit is dismissed at the cost of appellees.

FONES, C. J., and COOPER, BROCK and HENRY, JJ., concur.

OPINION ON PETITION TO REHEAR

HARBISON, Justice.

A courteous and thoughtful petition to rehear has been filed on behalf of appellees. After careful consideration of the same, the Court is of the opinion that the issues presented therein were dealt with in the original opinion. Accordingly the petition to rehear is denied at the cost of appellees.

FONES, C. J., and COOPER, BROCK and HENRY, JJ., concur.

---

**3.** The Commission states that it only proposes to assess equipment held under a "long-term" lease as distinguished from a trip lease or other short-term arrangement. As previously pointed out, in this opinion we have undertaken to deal only with general principles of assessment rather than specific factual situations because of the lack of an evidentiary record or of issues dealing with anything other than the general powers of the Commission.