**LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT,**
Appellant,

v.

**LEXINGTON HERALD–LEADER COMPANY and Robert H. Campbell, Appellees.**

**No. 96–SC–399–DG.**

Supreme Court of Kentucky.

March 27, 1997.

Edward W. Garner, Theresa L. Holmes, Lexington–Fayette Urban County Government, Department of Law, Lexington, for Appellant.

Robert F. Houlihan, Jr., James L. Thomerson, Stoll, Keenon & Park, L.L.P., Lexington, for Appellees.

LAMBERT, Justice.

The principal issue in this Open Records Act case concerns the application of the "personal privacy" exclusion contained in KRS 61.878(1)(a), and the tension between the exclusion and the general rule found in KRS 61.872(1). Of particular relevance here and in every such case is KRS 61.882(4) which articulates public policy as favoring the free and open examination of public records even though such may cause embarrassment or inconvenience to public officials and others.

In response to appellees' request, appellant furnished a computer print-out which showed payments made by the government in connection with lawsuits against the police department for the preceding five-year period. However, the government refused to provide unredacted copies of the final settlement agreements or other information by which appellees could determine the identities of the recipients of the settlements. It relied in part on confidentiality clauses in two of the three agreements whereby the settlement recipients and their attorneys agreed not to disclose any terms of the agreements. Thus, while appellees were informed of the fact of three such settlements for $137,500, $20,000, and $7,141, information as to whom and in compensation for what injuries such sums were paid was withheld. Precisely, that which was sought but was withheld was unredacted copies of the final settlement agreements. Review was sought in the Fayette Circuit Court and after a hearing, that court determined that KRS 61.878(1)(a) was inapplicable and ordered that the settlement agreements be furnished. In a post-judgment motion, the government also argued that KRS 61.878(1)(l) protected the records at issue here from disclosure. This claim was likewise overruled.

The Court of Appeals affirmed the circuit court and held the claimed exclusions inapplicable. With respect to the personal privacy exclusion found in KRS 61.878(1)(a), it declared that the information sought was "of a nature substantially distinguishable from the [detailed familial and psychological] material in *Kentucky Board of Examiners [v. Courier–Journal & Louisville Times Co.], [Ky., 826 S.W.2d 324 (1992)]."* Slip op. at 5. It also found no validity in the government's contention that KRS 61.878(1)(l) prohibited disclosure on grounds that the final settlement agreements were the end products of meetings properly closed pursuant to KRS 61.810(1)(c).

We will not burden this opinion with a repetition of policy arguments underlying the Open Records Act. We will be satisfied with the observation that the Act, in one form or another, has been in existence since 1976, and since that time, this Court and the Court of Appeals have rendered a significant number of opinions construing it. A recent decision of this Court, *Beckham v. Board of Education of Jefferson County*, Ky., 873 S.W.2d 575 (1994), contains a discussion which is representative of our view with respect to application of the Act:

The unambiguous purpose of the Open Records Act is the disclosure of public records even though such disclosure may cause inconvenience or embarrassment. KRS 61.871. An extensive mechanism has been created for exercise of the right of inspection and imposes upon the record custodian the duty to respond appropriately. KRS 61.872. Public agencies are authorized to adopt rules and regulations but

may not impose requirements which have the effect of thwarting access. KRS 61.876. In the event the request for access is denied, the agency must state the specific exemption which authorizes withholding the record and a party denied access may seek review by the Attorney General and the burden of proof is upon the agency. KRS 61.880.

*Id.* at 577.

█ There could be no viable contention that an agreement which represents the final settlement of a civil lawsuit whereby a governmental entity pays public funds to compensate for an injury it inflicted is not a public record. KRS 61.872(1) provides in part that "all public records shall be open for inspection by any person" and we can think of no construction of this language which would permit exclusion of an agreement of the type at issue here. In fact, even before enactment of the Open Records statute, we held in *Courier Journal & Louisville Times Co. v. McDonald,* Ky., 524 S.W.2d 633 (1974), that "the payment of city funds ... is a matter with which the public has a substantial concern, against which little weight can be accorded to any desire of the plaintiff in that suit to keep secret the amount of money he received." *Id.* at 635. Thus, the government is without any basis upon which to claim a right of privacy, and unless the documents at issue are excluded from disclosure by one or more of the specific provisions of the Act, they must be produced. KRS 61.871.

Typically, the provision relied upon by persons wishing to prevent disclosure is KRS 61.878(1)(a) which excludes "public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy." We have held that this provision "reveals an unequivocal legislative intention that certain records, albeit they are 'public,' are not subject to inspection, ...." *Kentucky Board of Examiners of Psychologists v. The Courier–Journal & Louisville Times Co.,* 826 S.W.2d 324, 327 (1992).

A leading decision under the Open Records Act is *Kentucky Board of Examiners of Psychologists v. The Courier–Journal & Louisville Times Co., supra,* in which the newspaper sought access to all documents relating to a psychologist who had been charged with sexually abusing his clients. In its discussion, the Court made a number of points worthy of repetition here. With respect to KRS 61.878(1)(a), we acknowledged that personal privacy is of legitimate concern and worthy of protection from invasion by unwarranted public scrutiny. We also acknowledged the statutory bias in favor of disclosure and described the proper form of analysis as weighing the antagonistic interests. We said:

> The statute contemplates a case-specific approach by providing for de novo judicial review of agency actions, and by requiring that the agency sustain its action by proof. Moreover, the question of whether an invasion of privacy is "clearly warranted" is intrinsically situational, and can only be determined within a specific context.

*Id.* at 328. We concluded that the personal privacy exclusion was applicable as the complaint file which the newspaper sought would necessarily reveal the details of sexual misconduct committed against the clients of the psychologist.

> The information sought touches upon the most intimate and personal features of private lives. Mindful that the policy of disclosure is purposed to subserve the public interest, not to satisfy the public curiosity, and that the Board has in this case effectually promoted the public interest in regulation, and that there is a countervailing public interest in personal privacy, here strongly substantiated, we hold that further disclosure of information contained in the public record in this case would, as a matter of law, constitute a clearly unwarranted invasion of personal privacy.

*Id.*

Another relevant decision is *Zink v. Commonwealth,* Ky.App., 902 S.W.2d 825 (1994), in which an attorney who sought to solicit Workers Compensation clients requested access to an instrument filed pursuant to the Workers Compensation Act known as the "Employer's First Report of Injury." The instrument in question contained details concerning the injury sustained by the worker

but also contained a great deal of other personal information. The Court of Appeals analyzed the request as required by *Kentucky Board of Examiners of Psychologists, supra,* and concluded that the public interest in disclosure was *de minimis* while the privacy of the injured worker would be significantly compromised. Affirming the court below, the Court of Appeals held that disclosure would constitute a clearly unwarranted invasion of privacy. This was notwithstanding its recognition that "[W]hen an individual enters on the public way, breaks a law, or inflicts a tort on his fellow man he forfeits his privacy to a certain extent." *Zink,* 902 S.W.2d at 828.

Another of our leading decisions in this arena is *Beckham v. Board of Education of Jefferson County, supra,* in which we held that Board of Education employees had standing to challenge the release of their personnel records on grounds that the release of such information might constitute an unwarranted invasion of personal privacy. This recognition of standing was despite a contention that the only parties who should be heard were the requesting party and the records custodian. *Beckham* highly valued the personal privacy exclusion and recognized an expansive right of persons who might be affected by the release of governmental information to be heard on their privacy claim.

■ The foregoing decisions establish certain points which are noteworthy in this case. Of primary concern is the nature of the information which is the subject of the requested disclosure; whether it is the type of information about which the public would have little or no legitimate interest but which would be likely to cause serious personal embarrassment or humiliation. The Court had no difficulty concluding in *Board of Examiners of Psychologists* that information which would have revealed the identities of persons who had been sexually victimized should not be produced. In *Zink* the information sought did not implicate any significant public interest but did transgress, albeit not greatly, upon the privacy of the subject individuals. *Beckham* held that privacy rights may extend to citizens who are not

parties to the Open Records request but who would be substantially affected by the disclosure.

After weighing the competing interests, we must conclude that the privacy claim here is simply insufficient to overcome the public's right of access to information of this type. Addressing this question, the Supreme Court of Alaska in *Anchorage School District v. Anchorage Daily News,* 779 P.2d 1191 (Alaska 1989), invalidated a confidentiality agreement on grounds of public interest in disclosure.

> We recognize the important public policy served by those measures which encourage settlement.... We recognize also that some litigants are unwilling to settle unless the terms of settlement remain confidential, and that a municipality's inability to assure confidentiality may, therefore, adversely affect its ability to negotiate a settlement. Nevertheless, the specific statutory provisions upon which the Daily News relies reflect a policy determination favoring disclosure of public records over the general policy of encouraging settlement. *The people of this state, through their elected representatives, have stated in the clearest of terms that it is more important that they have access to this type of information than that it remain confidential.* Thus, we hold that a public agency may not circumvent the statutory requirements by agreeing to keep the terms of a settlement agreement confidential.

*Id.* at 1193.

Our Court of Appeals in the instant case well expressed a similar view as follows:

> Within the specific context of the case *sub judice,* the redacted information is not of such a personal nature that its disclosure would constitute an unwarranted invasion of privacy pursuant to KRS 61.878(1)(a). This case involves information that is of a nature substantially distinguishable from the material in *Kentucky Board of Examiners, supra.* Furthermore, a confidentiality clause reached by the agreement of parties to litigation cannot in and of itself create an inherent right to privacy superior to and exempt from the statutory mandate for disclosure contained

in the Open Records Act. The right to privacy has been defined as the "right to live without unwarranted interference by the public in matters with which the public is not necessarily concerned." *Wheeler v. P. Sorensen Manufacturing Company, Inc.*, Ky.App., 415 S.W.2d 582, 585 (1967). Some of the matters with which the public is necessarily concerned are set forth in *Zink v. Commonwealth*, Ky.App., 902 S.W.2d 825, 828 (1994): "[W]hen an individual enters on the public way, breaks a law, or inflicts a tort on his fellow man he forfeits his privacy to a certain extent." In balancing the sacrosanct right of an individual to privacy against legitimate public concerns and the right of the public to inquire into the workings of government, we find that a settlement of litigation between private citizens and a governmental entity is a matter of legitimate public concern which the public is entitled to scrutinize. A confidentiality clause in such an agreement is not entitled to protection—in contrast with agreements containing the kind of matters protected by the privileges discussed above.

Slip op. at 5–6.

The record in this case gives no indication that significant privacy rights of the settling plaintiffs are implicated here. Only two of the three settlement agreements said anything about privacy and in those, the provisions were clearly for benefit of the government and not the other parties. We will not speculate, therefore, whether anything about these settled claims would have been entitled to privacy protection.

On the other hand, we recognize that in some cases there may be a legitimate concern for personal privacy which would be sufficient under the Act. If such circumstances prevail, it is the responsibility of the plaintiff or his counsel to see that the agreement reflects his request for confidentiality, and to demand notification from the government prior to release of the agreement. Without such a demand for notice, the governmental entity will ordinarily make the disclosure and a person wishing to prevent it will be without any practical means of asserting his rights under KRS 61.882(1). *See*

*Beckham* at 578. When the agreement so provides, however, the governmental entity will give notice to the affected party who may then take such further action as he deems appropriate.

 We have examined appellant's exclusion claim based on KRS 61.878(1)(*l*) and believe it to be clearly inapplicable. Such an argument requires treating settlement agreements as equivalent to documents produced in a closed meeting properly exempted from the Open Meetings Act, KRS 61.805 *et. seq.* However, the Open Meetings Act litigation exception addresses attorney-client confidentiality in meetings rather than documents produced as the end result. Moreover, the settlement agreements at issue here did not arise out of closed meetings but were simply negotiated by counsel.

For the foregoing reasons, we affirm the Court of Appeals.

All concur.