RENDERED: MARCH 18, 2010
TO BE PUBLISHED

# Supreme Court of Kentucky

2009-SC-000018-MR

CENTRAL KENTUCKY NEWS-JOURNAL                                      APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                            CASE NO. 2008-CA-001605-OA
TAYLOR CIRCUIT COURT NO. 03-CI-00059

HON. DOUGHLAS M. GEORGE (JUDGE,
TAYLOR CIRCUIT COURT), ET AL.                                      APPELLEES

## OPINION OF THE COURT BY JUSTICE SCOTT

### REVERSING

Central Kentucky News-Journal petitioned the Court of Appeals for a writ

of mandamus directing Honorable Doughlas M. George, Judge of the Taylor

Circuit Court, to grant it access to sealed copies of confidential settlement

agreements involving the Taylor County Board of Education, the Board of

Education of Campbellsville, and certain employees. The Court of Appeals

denied the writ and Central Kentucky News-Journal now appeals to this Court

as a matter of right. Ky. Const. § 115; CR 76.36(7)(a). For reasons that follow,

we reverse the Order of the Court of Appeals.

### I. Background

This appeal arises from the continuing efforts of Appellant, Central

Kentucky News-Journal, to gain access to two confidential settlement

agreements stemming from two separate lawsuits. Both suits were filed in Taylor Circuit Court by Katherine Moss, a former employee of Campbellsville High School and, at the time, a prospective employee of Taylor County High School. Moss first brought an action against the Board of Education of the Campbellsville Independent School District, its former Superintendent, Charles Vaughan, in his official capacity, and the former Principal of Campbellsville High School, Greg Chick, in both his official and individual capacities. Therein, Moss alleged that she was the victim of sexual harassment. Moss later filed suit against the Taylor County Board of Education, its Superintendent, Gary N. Seaborne, in his official capacity, and the Principal of the Taylor County High School, Gaylon Yarberry, in both his official and individual capacities. Therein, Moss alleged that she was wrongfully refused employment.

After extensive discovery, the parties participated in private mediation involving both cases, and a settlement was reached.[1] In consideration of the settlement, the parties agreed that its terms would remain confidential. Thereafter, in an agreed order of dismissal, the Taylor County Circuit Court Judge, Doughlas George, dismissed the Complaints, sealed the terms of the dismissal and settlement, and ordered the parties to strictly adhere to the confidentiality provisions contained in the agreements.

Following these settlements, Appellant filed written requests under the Kentucky Open Records Act with both school districts and sought "copies of records with regard to the recent settlement" in each case. In response, both

---

[1] The mediation was not ordered or overseen by the Taylor Circuit Court.

school districts declined to produce any such records, citing the orders of the Taylor Circuit Court purporting to seal the terms of the dismissal and settlement and its order for the parties to strictly adhere to the confidentiality provisions contained in the agreements.

In accordance with the Open Records Act, Appellant appealed to the Kentucky Attorney General. In a subsequent Open Records Decision, 07-ORD-110, the Attorney General opined that the settlement agreements were public records for purposes of the Act and must be disclosed to the public upon request unless they qualified for exclusion under one or more of the Act's exceptions. Nevertheless, because the Taylor Circuit Court entered an order sealing agreements and directing the parties to adhere to their confidentiality provisions, the Attorney General concluded that its authority was limited and the issue of public access to the agreements was one to be resolved by the court.

Thereafter, Appellant moved to intervene in both actions in the Taylor Circuit Court so as to assert its right of access to the settlement agreements. In addition, Appellant sought to have the trial court unseal the terms of the agreements, vacate its orders regarding confidentiality, and to make any future hearings related to the case open to the public and press. The trial court, in an agreed order, consolidated the two cases in order to rule on Appellant's motions. After reviewing the settlement agreements in camera, the trial court denied Appellant's motion to intervene and held that it did not hold a strong

3

and legitimate interest in the terms of the agreements so as to warrant its intervention.

Seeking relief from that order, Appellant petitioned the Court of Appeals for a writ of mandamus. The Court of Appeals granted the petition in part and held that *Courier-Journal and Louisville Times Co. v. Peers*, 747 S.W.2d 125 (Ky. 1988), established that Appellant, as a member of the news media, was entitled to intervene and participate in a hearing on the underlying merits of its claims.[2] Accordingly, the Court of Appeals directed the trial court to vacate its order denying Appellant's motion to intervene, to enter an order allowing it to intervene, to address the remainder of its requested relief, and to file the agreements into the record. For these reasons, the Court of Appeals concluded that it would be premature to order the trial court to vacate its orders sealing the agreements and directing the parties to adhere to their confidentiality provisions.

On remand, the trial court entered an order placing the agreements into the record,[3] asked the parties if they had further evidence to present on the issue of whether the settlement agreements should be disclosed, and offered to take additional sworn testimony at a hearing, if the parties desired. Appellant advised the trial court that it had no additional evidence to present and

---

[2] Because the trial court had previously conducted a hearing on the matter in conjunction with Appellant's motion to intervene, the Court of Appeals held that whether to conduct another hearing on remand would be within the trial court's discretion.

[3] In spite of the trial court's order, the settlement agreements were not transmitted with the record on appeal. By this Court's own motion, the record has been properly supplemented with the agreements for our review.

requested the court to rule on the record. The original parties filed affidavits into the record, but objected to a further hearing. The trial court complied and addressed the issue of whether the documents should be unsealed. The court analyzed this Court's holding in *Roman Catholic Diocese of Lexington v. Noble*, 92 S.W.3d 724 (Ky. 2002) and the applicability of the Open Records Act's privacy exemption before concluding that neither the First Amendment nor the Open Records Act required the court to unseal the agreements for Appellant's access.

Appellant again petitioned the Court of Appeals for a writ of mandamus that would direct the trial court to vacate its order and open the settlement agreements and any related documents for public view. The Court of Appeals, citing this Court's decision in *Hoskins v. Maricle*, 150 S.W.3d 1 (Ky. 2004), denied the petition and, in a brief opinion, held that Appellant failed to show that the trial court was acting outside its jurisdiction or acting erroneously. It is from this order that Appellant now appeals as a matter of right pursuant to CR 76.36(7)(b).

On appeal, Appellant asks this Court to reverse the Order of the Court of Appeals and order it to instruct the trial court to vacate its orders sealing the terms of the settlement agreements. For the reasons that follow, we reverse the Order of the Court of Appeals.

## II. **Appropriateness of Writ**

As this Court has often stated, a writ of mandamus is an "extraordinary remedy and [the Courts] have always been cautious and conservative both in

5

entertaining petitions for and in granting such relief." *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 808 (Ky. 2004) (*quoting Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky. 1961)). Indeed, the circumstances justifying the grant of such a writ are limited:

> A writ . . . *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins*, 150 S.W.3d at 10 (emphasis in original). Here, Appellant's petition did not challenge the trial court's jurisdiction, but rather claimed that the court erroneously denied it access to the settlement agreement.

In the usual case, Appellant would have to first demonstrate that it is without an adequate remedy by appeal or otherwise and that great injustice and irreparable injury would result without issuance of the writ *before* the Court of Appeals would consider the merits of its claim. *See Trude*, 151 S.W.3d at 808. Yet, by virtue of this Court's holding in *Peers*, 747 S.W.2d at 128, "the news media have been made an exception to the usual rules regarding standing to . . . seek mandamus [or prohibition] where access is denied", as it "represents exigent circumstances justifying coming directly to the appellate courts for an extraordinary remedy." *Id.* at 129; *see also Noble*, 92 S.W.3d 729 ("Once a media representative moves to intervene and requests a hearing, the representative may attack an adverse ruling by petitioning the Court of Appeals for a writ of mandamus or prohibition.") (*citing Peers*, 747 S.W.2d at 129); *cf.*

*Noble*, 92 S.W.3d 729 ("But where there is no order denying access, there are no exigent circumstances to justify granting the writ. Rather, the party seeking the writ . . . must satisfy the usual and strict requirements for justifying relief by prohibition or mandamus."). Such must be the case, *Peers* explained, because "[t]he First Amendment guarantee of freedom of the press and the Sixth Amendment guarantee of public trial in criminal cases, as presently interpreted and applied in judicial decisions, have placed the news media in a unique position in demanding access to court proceedings," a position that "includes the right to gather news about a civil case." *Peers*, 747 S.W.2d at 127-28 (*citing Branzburg v. Hayes*, 408 U.S. 665 (1972); *CBS, Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975)).

## III. Appellate Standard of Review

Where the "procedural prerequisites for a writ are satisfied, 'whether to grant or deny a petition for a writ is within the [Court of Appeals'] discretion,'" "[a]nd appellate review of that decision is limited to an abuse of discretion inquiry." *Rehm v. Clayton*, 132 S.W.3d 864, 866 (Ky. 2004) (*quoting Peterson v. Shake*, 120 S.W.3d 707, 711 (Ky. 2003) (Keller, J., concurring)). Where pure questions of law are involved, we review the Court of Appeals' determination de novo. *See e.g. Rehm*, 132 S.W.3d at 866 (*citing Kentucky Labor Cabinet v. Graham*, 43 S.W.3d 247, 251 (Ky. 2001)).

## IV. Analysis

Appellant argues that the Court of Appeals left uncorrected the trial court's erroneous conclusion that the settlement agreements at issue should

7

remain under seal. We agree and conclude that the agreements must be disclosed pursuant to Kentucky's Open Records Act. Because it is dispositive of the issues on appeal, we see no need to address Appellant's related arguments.

Generally, under Kentucky's Open Records Act, "[a]ll public records shall be open for inspection by any person, except as otherwise provided by KRS 61.870 to 61.884." KRS 61.872(1). Though there are, indeed, several statutory exceptions delineated by the General Assembly, the Act presumes a public interest in the "free and open examination of public records."[4] KRS 61.882(4). Accordingly, the Act's exceptions "shall be strictly construed," even when disclosure would otherwise "cause inconvenience or embarrassment to public officials or others." Id.

Here, it is beyond question that the settlement agreements are public

---

[4] As to the nature of the public interest involved, this Court has explained:

> The public's "right to know" under the Open Records Act is premised upon the public's right to expect its agencies properly to execute their statutory functions. In general, inspection of records may reveal whether the public servants are indeed serving the public, and the policy of disclosure provides impetus for an agency steadfastly to pursue the public good.

> *Kentucky Bd. of Examiners of Psychologists v. Courier-Journal & Louisville Times Co.*, 826 S.W.2d 324, 328 (Ky. 1992); *see also Zink v. Commonwealth, Dept. of Workers' Claims, Labor Cabinet*, 902 S.W.2d 825, 828-29 (Ky. App. 1994) ("At its most basic level, the purpose of disclosure focuses on the citizens' right to be informed as to what their government is doing. That purpose is not fostered however by disclosure of information about private citizens that is accumulated in various government files that reveals little or nothing about an agency's own conduct.").

8

records for purposes of the Open Records Act.[5]  Appellees contend that the agreements are, nevertheless, exempted from disclosure by virtue of the Act's personal privacy exception.  We cannot agree and find controlling this Court's holding in *Lexington-Fayette Urban County Gov't v. Lexington Herald-Leader*, 941 S.W.2d 469 (Ky. 1997).

*Lexington Herald-Leader* involved an agency's denying a local newspaper access to settlement agreements entered into by the agency and various unidentified individuals in resolution of their claimed injuries.  *See id.* at 470. Though the agency chose to reveal the amount of consideration, it would not disclose the identity of the recipients nor the types of underlying injuries.  *Id.* Similar to the case at bar, the agency cited to the confidentiality provisions contained in the agreements in denying the newspaper's request.  *Id.*  On appeal, this Court held that Kentucky's Open Records Act required public disclosure of the recipients, *notwithstanding* the agreements' confidentiality provisions.  *See id.* at 471-73.

*Lexington Herald-Leader* concluded that because the settlement agreements involved the expenditure of public funds, the public's interest in the outcome of the settlement was, a fortiori, strong:  "[t]here could be no viable contention that an agreement which represents the final settlement of a civil lawsuit whereby a governmental entity pays public funds to compensate for an

---

[5] A public record "means all books, papers, maps, photographs, cards, tapes, discs, diskettes, recordings, software, or other documentation regardless of physical form or characteristics, which are prepared, owned, used, in the possession of or retained by a public agency."  KRS 61.870(2).

injury it inflicted is not a public record." *Id.* at 471. Indeed, the Court explained, "even before enactment of the Open Records statute, we held . . . that 'the payment of city funds . . . is a matter with which the public has a substantial concern, against which little weight can be accorded to any desire of the plaintiff in that suit to keep secret the amount of money he received.'" *Id.* (*quoting Courier Journal & Louisville Times Co. v. McDonald,* 524 S.W.2d 633 (Ky. 1974)).

Moreover, *Lexington Herald-Leader* rejected the idea that a confidentiality agreement may impute, per se, a public record with a privacy claim superior to that of the public's right of access:

> [A] confidentiality clause reached by the agreement of parties to litigation cannot in and of itself create an inherent right to privacy superior to and exempt from the statutory mandate for disclosure contained in the Open Records Act. . . . In balancing the sacrosanct right of an individual to privacy against legitimate public concerns and the right of the public to inquire into the workings of government, we find that a settlement of litigation between private citizens and a governmental entity is a matter of legitimate public concern which the public is entitled to scrutinize. A confidentiality clause in such an agreement is not entitled to protection . . .

941 S.W.2d at 472-73; *see also id.* at 472 ("[T]he specific statutory provisions . . . reflect a policy determination favoring disclosure of public records over the general policy of encouraging settlement. *The people of this state, through their elected representatives, have stated in the clearest of terms that it is more important that they have access to this type of information than that it remain confidential.* Thus, we hold that a public agency may not circumvent the statutory requirements by agreeing to keep the terms of a settlement agreement

10

confidential.") (*quoting Anchorage School District v. Anchorage Daily News*, 799 P.2d 1191, 1193 (Alaska 1989)) (emphasis in original).

Turning back to the case at bar, we think it quite clear that the settlement agreements are presumably public records subject to disclosure, regardless of their confidentiality provisions. Having reviewed the agreements, it appears that the settlement proceeds were paid out of the Kentucky School Board Insurance Trust, an insurance policy, the premiums for which had to have been, at least indirectly, paid with public tax money. Moreover, the agreements resolved claims between Moss, the school districts, and its agents in their official (as well as personal) capacities, thus negating any notion that the agreements concerned purely personal matters.

This notwithstanding, we must still address whether the agreements are, as Appellees contend and the trial court found, exempt from disclosure under the Act's personal privacy exception, KRS 61.878(1)(a).[6] *See Lexington Herald-Leader*, 941 S.W.2d at 473 ("[W]e recognize that in some cases there may be a legitimate concern for personal privacy [in confidential settlement agreements] which would be sufficient under the Act."). Mindful that the Act's exemptions must be strictly construed, KRS 61.882(4), and that it is the burden of the agency resisting disclosure to sustain its action, KRS 61.882(3), this Court has,

---

[6] KRS 61.878(1)(a), in pertinent part, reads:

> (1) The following public records are excluded from the application of KRS 61.870 to 61.884 and shall be subject to inspection only upon order of a court of competent jurisdiction . . . :

> (a) Public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy . . .

11

indeed, held that certain information may be exempt under the Act where "it is the type of information about which the public would have little or no legitimate interest but which would be likely to cause serious personal embarrassment or humiliation." *Lexington Herald-Leader*, 941 S.W.2d at 472; *see also Kentucky Bd. of Examiners of Psychologists*, 826 S.W.2d at 324 (identities of persons sexually victimized held exempt); *Zink*, 902 S.W.2d at 825 (forms containing individuals' marital status, number of dependents, wage rate, social security number, home address and telephone number held exempt). We make this determination by "weighing the privacy interests of the persons involved against the public's interest in disclosure," asking "whether the information sought is of a personal nature," and, if so, "whether the public disclosure of this information would constitute a 'clearly unwarranted invasion of personal privacy.'" *Cape Publications, Inc. v. Univ. of Louisville Found., Inc.*, 260 S.W.3d 818, 821 (Ky. 2008) (*citing Kentucky Bd. of Examiners of Psychologists*, 826 S.W.2d at 327-28).

Again having reviewed the agreements, we conclude that any contention that their disclosure would constitute a clearly unwarranted invasion of personal privacy is meritless. The agreements do not contain *any* of the underlying details of the claims they purport to resolve that could expose Moss or others to the risk of serious personal embarrassment of humiliation. Rather, the agreements merely contain some scant personal identifiers that

12

could have easily been redacted.[7] Against such a minimal privacy interest lies, as we have discussed, a strong public interest in knowing how its tax money is being put to use by the state's agencies. While Appellees' claim that all that remains to be disclosed is the amount of consideration paid to Moss as though this were an illegitimate curiosity, we see it as bearing a direct nexus to exactly how the public agency uses the public's money – whether as settlement amounts or in regard to liability insurance premiums. Because KRS 61.878(1)(a) did not apply to the settlement agreements so as to exempt them from public disclosure under the Open Records Act, it was, therefore, error for the trial court to so conclude. The Court of Appeals thus abused its discretion in denying Appellant issuance of the writ.

## V. **Conclusion**

For the foregoing reasons, we reverse the Order of the Court of Appeals and remand this matter to that court for proceedings consistent with this opinion.

Minton, C.J.; Abramson, Noble, Schroder, and Venters, JJ., concur. Cunningham, J., concurs by separate opinion in which Scott, J., joins.

CUNNINGHAM, J., CONCURRING: I concur with the majority opinion and believe, although we do not specifically hold today, that the Open Records law is invoked – subject to its exemptions – anytime a public record keeping agency is employed, even by private parties. Of course, it is the circuit clerk to

---

[7] On remand, the court should redact any reference to Moss' social security number as well as her counsel's tax identification number. In addition, the final page attached to the agreements (including a photocopy of the check) need not be disclosed.

13

which I refer. Here, the litigation involves a public agency with public funds being affected. However, even when the litigation is between private parties, once the settlement agreement has been lodged with the clerk – a public agent – then it becomes as any other document so filed. There are ample protections for private parties under KRS 61.878.

I do not believe our holding here today is intended to infringe upon the broad discretion of trial courts in guarding against prejudice which might arise from public disclosure of certain evidence filed of record while the case is ongoing. The temporary sealing of certain documents and other like precautions may, in some cases, be necessary to insure both sides a fair trial. Our holding here today refers only to settlement agreements filed at the conclusion of the case.

Lastly, it seems that it would behoove private litigants not to file in the public record any settlement agreements – sealed or unsealed – which might contain information not wished to be disclosed to public scrutiny. An agreed order of dismissal should be sufficient, and settlement agreements can be suitably drawn to stand upon their own as far as future enforcement is concern.

Scott, J., joins.

COUNSEL FOR APPELLANT:

Ashley Cleek Pack
James Lee Adams
Jeremy Stuart Rogers
Jon L. Fleischaker
Dinsmore & Shohl, LLP
1400 PNC Plaza
500 West Jefferson Street
Louisville, KY 40202


COUNSEL FOR APPELLEES:

David Lee Yewell
221 West Second Street
Owensboro, KY 42303

John Frith Stewart
Stephen Charles Emery
Stewart, Roelandt, Stoess, Craigmyle & Emery, PLLC
6506 West Highway 22
P.O. Box 307
Crestwood, KY 40014

Stewart Christopher Burch
Logan & Gaines, PLLC
114 West Clinton St.
Frankfort, KY 40601

Michael A. Owsley
Regina A. Jackson
Whayne Cravens Priest, III
English, Lucas, Priest & Owsley, LLP
1101 College Street
P.O. Box 770
Bowling Green, KY 42102-0770