**KENTUCKY BOARD OF EXAMINERS OF PSYCHOLOGISTS, and DIVISION of OCCUPATIONS and PROFESSIONS, DEPARTMENT for ADMINISTRATION and Mr. David L. Nicholas and Dr. Stephan T. Demers, Appellants,**

v.

**The COURIER–JOURNAL AND LOUISVILLE TIMES COMPANY, and Andrew Wolfson, and Gideon Gil, Appellees.**

No. 90–SC–498–DG.

Supreme Court of Kentucky.

March 12, 1992.

Chris Gorman, Atty. Gen., Robert V. Bullock, Asst. Atty. Gen., Frankfort, for appellants.

Jon L. Fleischaker, Kimberly K. Greene, Peggy von Werdt, Wyatt, Tarrant & Combs, Louisville, for appellees.

Stephen F. Schuster, Ogden, Sturgill & Welch, Louisville, for amicus curiae.

COMBS, Justice.

The general issue on review is whether the courts below have properly applied the Kentucky Open Records Act, KRS 61.870 through .884, to the essentially undisputed facts of this case.

The Kentucky Board of Examiners of Psychologists, as the agency responsible for licensure and regulation of psychologists in the Commonwealth, received written complaints from a number of clients of one Dr. Tadajewski, each charging acts of misconduct within the professional relationship. All indications are, and the litigants agree, that the alleged objectionable conduct consisted of sexual improprieties. An investigation ensued, and in the complaint file were accumulated, among other things, the complaints, Tadajewski's patient files on some of the alleged victims, and the depositions of the complainants, Tadajewski, and others.[1]

A formal complaint charging misconduct toward two clients was issued in 1983, and subsequently was twice amended to include additional clients' complaints. A formal hearing was scheduled, but was rendered unnecessary when in 1985 Tadajewski resigned from practice, surrendered his license, and agreed that he would neither seek re-licensure nor engage in providing mental health services. It was further agreed that no effort would be made to seal the official file. The complaint was dismissed.

The Courier–Journal eventually sought access to all documents relating to Tadajewski.[2] The Board provided copies of the original and amended formal complaints (which named the offended clients) and its final order. It further has agreed to provide Tadajewski's license application and the results of his licensing examination. However, the Board refused to permit inspection of the complaint file. Its position was upheld upon review by the Attorney General, whereupon the Courier–Journal brought an action in Franklin Circuit Court to compel disclosure under the Open Records Act. Summary judgment for the Courier–Journal was affirmed by the Court of Appeals, and we took review.

KRS 61.872(1) provides, in part, that "All public records shall be open for inspection

---

1. The custodian of the records for the Board of Examiners reports the following catalog of items in the complaint file:
   1 Volume 1 Deposition of Alleged Victim # 1; 2 Volume 2 Deposition of Alleged Victim # 1; 3 Volume 1 Deposition of A.P. Tadajewski; 4 Volume 1 Deposition of A.P. Tadajewski (COPY); 5 Volume 2 Deposition of A.P. Tadajewski; 6 Volume 2 Deposition of A.P. Tadajewski (COPY); 7 Deposition of Alleged Victim # 4; 8 Deposition of I.E.H.; 9 Deposition of Tadajewski's Wife; 10 Deposition of E.D.; 11 Exhibits to Deposition of E.D.; 12 Deposition of Tadajewski's Secretary; 13 Deposition of M.L.; 14 Deposition of Alleged Victim # 2; 15 Volume 1 Deposition of Alleged Victim # 3; 16 Volume 2 Deposition of Alleged Victim # 3; 17 Tadajewski's Patient File of Alleged Victim # 2; 18 Tadajewski's Patient File of the child of Alleged Victim # 2; 19 Tadajewski's Patient File of Alleged Victim # 1 and child; 20 Investigative Complaint File of A.P. Tadajewski; 21 File of Complaints, Defenses, Exceptions; 22 File of General Correspondence; 23 Exhibits—Deposition 3/14/85; 24 File Minutes of Prehearing Conferences; 25 File of Motions; 26 File of Notices; 27 File of Orders; 28 File of Subpoenas; 29 Two tape recordings of Tadajewski; 30 Tape recording of 10/16/85 Psychology meeting; 31 Tape recording of Prehearing Conference 5/14/85; 32 Tape recording of Prehearing Conference 3/20/85; 33 Tape recording of Prehearing Conference 11/29/84; 34 Tape recording of Prehearing Conference 9/14/85; 35 Video Taped Deposition of Alleged Victim # 1 Tape # 1; 36 Video Taped Deposition of Alleged Victim # 1 Tape # 2; 37 Video Taped Deposition of Alleged Victim # 1 Tape # 3; 38 Video Taped Deposition of Alleged Victim # 1 Tape # 4; 39 Video Taped Deposition of Alleged Victim # 1 Tape # 5; 40 Edited Version Taped Deposition of Alleged Victim # 1 Tape # 1; 41 Edited Version Taped Deposition of Alleged Victim # 1 Tape # 2; 42 Edited Version Taped Deposition of Alleged Victim # 1 Tape # 3; 43 Three Tape Recordings of Tadajewski.

2. The request was subsequently modified so as not to include items 13, 17 [*sic* 18?], and 19. *See* note 1, *supra*.

by any person, except as otherwise provided by KRS 61.870 to 61.884...." The exception central to the present case is that found in KRS 61.878(1)(a):

(1) The following public records are excluded from the application of KRS 61.870 to 61.884 and shall be subject to inspection only upon order of a court of competent jurisdiction:

(a) Public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy[.] [3]

Relevant to the proper application of the rule and the exception are KRS 61.882(3), which provides that an agency resisting disclosure has the burden of proof to sustain its action, and KRS 61.882(4), which provides, in part:

(4) Courts shall take into consideration the basic policy of KRS 61.870 to 61.884 that free and open examination of public records is in the public interest and the exceptions provided for by KRS 61.870 to 61.884 or otherwise provided for by law shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others.

The narrow issues, then, are whether the subject information is of a "personal nature," and whether public disclosure "would constitute a clearly unwarranted invasion of personal privacy." Those questions were given scant consideration by both the trial court and the Court of Appeals. With respect to subsection (1)(a), the trial court ruled only that release of Tadajewski's license application (which is no longer withheld) could not be considered a clearly unwarranted invasion of his personal privacy. But the issue involves much more information than that to be found in the application, and many more privacy interests than just Tadajewski's.

With respect to the statutory exceptions provided in KRS 61.878(1)(f), (g), and (h), note 3, *supra*, the trial court held them inapplicable under authority of *Kentucky State Bd. of Medical Licensure v. Courier–Journal and Louisville Times Co.,* Ky. App., 663 S.W.2d 953 (1983). In affirming, the Court of Appeals cited as dispositive the decision in *City of Louisville v. Courier–Journal and Louisville Times Co.,* Ky. App., 637 S.W.2d 658 (1982).

In *City of Louisville,* the Court of Appeals held that investigative files of the police department's Internal Affairs Unit, which files were compiled as a result of citizen complaints against a particular officer, were protected under subsections (1)(g) and (1)(h) as "preliminary" materials, because the IAU was merely a fact finder with no disciplinary authority and the Chief of Police had not "adopt[ed] its notes or recommendations as part of his final action." *Id.,* 637 S.W.2d at 659. It further held that the complaints which had spawned the investigation could not be deemed preliminary, at least not on the same theory: "Inasmuch as whatever final actions are taken necessarily stem from them, they must be deemed incorporated as

---

**3.** In the trial court, but not thereafter, issue was made as to the applicability of other paragraphs of subsection (1), providing exceptions for:

"(f) Records of law enforcement agencies or agencies involved in administrative adjudication that were compiled in the process of detecting and investigating statutory or regulatory violations if the disclosure of the information would harm the agency by revealing the identity of informants not otherwise known or by premature release of information to be used in a prospective law enforcement action or administrative adjudication. Unless exempted by other provisions of KRS 61.870 to 61.884, public records exempted under this provision shall be open after enforcement action is completed or a decision is made to take no action. Provided, however that the exceptions provided by this subsection shall not be used by the custodian of the records to delay or impede the exercise of rights granted by KRS 61.870 to 61.884;

"(g) Preliminary drafts, notes, correspondence with private individuals, other than correspondence which is intended to give notice of final action of a public agency;

"(h) Preliminary recommendations, and preliminary memoranda in which opinions are expressed or policies formulated or recommended[.]"

The Board has also argued throughout that the statutory psychologist-client privilege, KRS 319.111, exempts these records from disclosure. *Cf.* KRS 61.878(1)(j), which excepts records or information "made confidential by enactment of the general assembly."

part of those final determinations." *Id.*, at 659, 660. Apparently not entirely comfortable with this distinction, the panel went on:

> We acknowledge that it is possible that these complaints could be afforded continuing exemption under subsection (g) relating to preliminary correspondence with private individuals; however, that determination would be made upon consideration of the facts on a case-by-case basis....

*Id.*, at 660.

In *Board of Medical Licensure*, the Court of Appeals relied upon its *City of Louisville* decision in holding that, once final action was taken by the Board, neither the initial complaints made against a physician nor investigative materials "adopted by the Board as part of its action" are exempt under KRS 61.878(1)(g) or (h). *Id.*, 663 S.W.2d at 956.

We need not examine those decisions for correctness of result or rationale. We need not attempt to reconcile the "case-by-case" caveat with the categorical "final action" rule, nor to decide whether a complaint file is "adopted by the Board as part of its action" when the formal complaint is dismissed. It suffices to say that we cannot accept the conclusion of the Court of Appeals that, because there was a final action, the decision in *City of Louisville* compels disclosure in the present case. KRS 61.-878(1)(a) was not at issue there (nor in *Board of Medical Licensure*); and 61.-878(1)(f), (g), and (h) are not at issue today. Even assuming (without conceding) that any final action necessarily incorporates the original complaints; and further that final action not only dissolves the institutional exception of subsection (1)(f), but also re-defines "preliminary" information under (1)(g) and (1)(h); and still further that none of the materials in the present case are protected under (1)(g) or (1)(h); assuming all of that, we are unable to see

that the issue of subsection (1)(a) is thereby resolved—or even broached. To infer that subsection (1)(a) may be invoked only where the subject information is already protected under a different paragraph would require a reading of the statute which is, to say the least, esoteric—and which, incidentally, would render (1)(a) a nullity.

A plain reading of subsection (1)(a) reveals an unequivocal legislative intention that certain records, albeit they are "public,"[4] are not subject to inspection, because disclosure would constitute a clearly unwarranted invasion of personal privacy.

■ Judging by order, if nothing more, one might say that (1)(a) is the foremost exception to the disclosure rule. Certainly it is an independently viable exception, not subordinate to any other, and not restricted to preliminary materials or non-final matters.

■ The language of subsection (1)(a) implies a number of other conclusions as well. First, it reflects a public interest in privacy, acknowledging that personal privacy is of legitimate concern and worthy of protection from invasion by unwarranted public scrutiny. We are therefore spared debate (or deprived of it) on privacy as a matter of natural right or constitutional law. Second, the statute exhibits a general bias favoring disclosure. An agency which would withhold records bears the burden of proving their exempt status. KRS 61.-882(3). The Act's "basic policy" is to afford free and open examination of public records, and all exceptions must be strictly construed. KRS 61.882(4), *supra*. Third, given the privacy interest on the one hand and, on the other, the general rule of inspection and its underlying policy of openness for the public good, there is but one available mode of decision, and that is by comparative weighing of the antagonistic interests. Necessarily, the circumstances

---

4. "'Public record' means all books, papers, maps, photographs, cards, tapes, disks, diskettes, recordings or other documentary materials regardless of physical form or characteristics, which are prepared, owned, used, in the possession of or retained by a public agency. 'Public record' shall not include any records owned by a private person or corporation that are not related to functions, activities, programs, or operations funded by state or local authority[.]" KRS 61.870(2).

of a particular case will affect the balance. The statute contemplates a case-specific approach by providing for de novo judicial review of agency actions, and by requiring that the agency sustain its action by proof. Moreover, the question of whether an invasion of privacy is "clearly unwarranted" is intrinsically situational, and can only be determined within a specific context.

■ The public's "right to know" under the Open Records Act is premised upon the public's right to expect its agencies properly to execute their statutory functions. In general, inspection of records may reveal whether the public servants are indeed serving the public, and the policy of disclosure provides impetus for an agency steadfastly to pursue the public good. The fundamental mission of the Board of Examiners of Psychologists is to ensure that citizens who consult a licensed psychologist will receive competent, ethical, professional services. Perhaps secondarily, the Board would likewise serve the public interest by preserving the credentials of a qualified practitioner wrongfully accused of unprofessional conduct.

■ In the present case it appears from the already-disclosed portions of the record that the Board has faithfully performed its purpose. It is evident that the Board investigated the allegations against Tadajewski promptly, responsibly, and thoroughly. The conditions of Tadajewski's resignation were equivalent to permanent revocation of his license—the ultimate disciplinary measure which might have been imposed had the action matured. And Tadajewski's capitulation prior to the scheduled hearing dispels any suspicion of persecution. Although the statute still applies, and the exception must be proven, these considerations are nonetheless material to the question of whether further disclosure would be "clearly unwarranted."

To vindicate its position, the Board offered the custodian's verified catalog of the contents of the file (note 1, *supra* ) and the affidavit of the Assistant Attorney General who had examined the file, which affidavit described the contents in general terms. This evidence, which was not controverted, establishes that the materials are rife with details of clients' marital and familial relationships and psychological symptoms, as well as Tadajewski's clinical impressions and course of therapy.

It is intuitive to deem information elicited within the unique relationship between a psychologist and client as both personal and private. We do not think it improper to note that exploration, in confidence, of a client's most private thoughts, experiences, and impulses is often the primary objective of psychological counselling. Although we do not reach the issue of whether the records in question are protected by the psychologist-client privilege of KRS 319.-111, we believe the very existence of that confidentiality statute is significant as demonstrating a recognition (in the public interest) of the especially personal, private nature of the relationship.

It is also relevant that the allegations against Tadajewski charged sexual misbehavior. The clients' complaints and their and Tadajewski's depositions surely focus upon the fine details of those charges. Such affronts are largely personal, and are commonly treated circumspectly. More importantly, perhaps, matters sexual ordinarily involve a psychological component, and it seems unlikely in this case that the incidents complained of were wholly independent of the psychologist-client relationship.

We must conclude that the information contained in the complaint file is of a personal nature—indeed, of a *very* personal nature—and that disclosure of the remainder of the public record in this case would constitute a serious invasion of the personal privacy of those who complained against Tadajewski, as well as other former clients involved in the investigation. The information sought touches upon the most intimate and personal features of private lives. Mindful that the policy of disclosure is purposed to subserve the public interest, not to satisfy the public's curiosity, and that the Board has in this case effectually promoted the public interest in regulation, and that there is a countervailing public interest in personal privacy, here strongly substantiated, we hold that further disclosure of infor-

mation contained in the public record in this case would, as a matter of law, constitute a clearly unwarranted invasion of personal privacy.

Accordingly, the decision of the Court of Appeals and the order of the Franklin Circuit Court are reversed. This matter is remanded to Franklin Circuit Court with directions to enter a judgment consistent with this opinion.

STEPHENS, C.J., and LAMBERT, LEIBSON, SPAIN and WINTERSHEIMER, JJ., concur.

REYNOLDS, J., dissents.