Lawrence Edward BOWLING,
Appellant,

v.

Ray BRANDENBURG, Chief and Custodian of Records, Police Department, City of Berea, Kentucky, Appellee.

No. 1999–CA–000742–MR.

Court of Appeals of Kentucky.

March 10, 2000.

Rehearing Denied May 19, 2000.

Discretionary Review Denied by Supreme Court March 14, 2001.

Lawrence Edward Bowling, Berea, pro se.

James T. Gilbert, Richmond, for Appellee.

Before: COMBS, DYCHE, and McANULTY, Judges.

## OPINION

DYCHE, Judge:

Lawrence Edward Bowling appeals from an order of the Madison Circuit Court denying his motion for summary judgment and granting summary judgment to Ray Brandenburg. Having reviewed the record and the applicable law, we affirm.

The Berea City Police Department received a 911 telephone call on December 16, 1998, seeking assistance from a caller who claimed to be Bowling's grandson, Kenneth Lawson. Lawson alleged that Bowling had threatened to kill his own wife, Lawson, and other members of Bowling's family. An officer was dispatched to Bowling's home, where both Bowling and his wife advised the officer that there was no problem. The police took no further action in regard to the call.

On December 18, 1998, Bowling requested and was provided a written record of the call. He also requested a copy of the recorded 911 call and on the advice of Brandenburg, the chief of police, Bowling put his request in writing on December 21, 1998, pursuant to KRS 61.872(2). After consulting with the city attorney, Brandenburg denied Bowling's request by letter dated December 23, 1998, citing KRS 61.878(1)(a), (h), and (i), with a brief explanation of each provision.

Bowling filed this action in Madison Circuit Court on January 8, 1999, seeking access to the tape pursuant to the Kentucky Open Records Act, KRS 61.870 to 61.884. He claimed that since the call pertained to him, he was entitled to a copy of the tape. Both parties filed motions for summary judgment. Bowling's motion was denied and Brandenburg's motion was granted by order of the court entered on March 25, 1999. This appeal followed.

Bowling relies on KRS 61.884 to assert that he has a right to the tape of the 911 telephone call. KRS 61.884 states that "[a]ny person shall have access to any public record relating to him or in which he is mentioned by name, upon presentation of appropriate identification, subject to the provisions of KRS 61.878." KRS 61.878 reads in pertinent part:

(1) The following public records are excluded from the application of KRS 61.870 to 61.884 and shall be subject to inspection only upon order of a court of competent jurisdiction, except that no court shall authorize the inspection by any party of any materials pertaining to civil litigation beyond that which is provided by the Rules of Civil Procedure governing pretrial discovery:

(a) Public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy;

. . . .

(h) Records of law enforcement agencies . . . if the disclosure of the information

would harm the agency ... by premature release of information to be used in a prospective law enforcement action.... Unless exempted by other provisions of KRS 61.870 to 61.884, public records exempted under this provision shall be open after enforcement action is completed or a decision is made to take no action; ....

(i) Preliminary drafts, notes, correspondence with private individuals, other than correspondence which is intended to give notice of final action of a public agency; ....

Brandenburg relies on these provisions, as well as opinions by the Attorney General interpreting these provisions, to support his argument that the tape should not be released to Bowling. Subsection (h), which does not prohibit the release of material after a decision has been made to take no action, obviously does not apply in this situation. We therefore turn our attention to the remaining two provisions.

Kentucky courts apparently have never considered whether an individual is entitled, under the Open Records Act, to a recording of a 911 call in which he is mentioned. The General Assembly has expressed that the policy of the Open Records Act "is that free and open examination of public records is in the public interest and the exceptions provided for by KRS 61.878 or otherwise provided by law shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others." KRS 61.871. In *Lexington–Fayette Urban County Government v. Lexington–Herald Leader Co.*, Ky., 941 S.W.2d 469 (1997), and *Kentucky Board of Examiners of Psychologists v. The Courier-Journal and Louisville Times Co.*, Ky., 826 S.W.2d 324 (1992), the Court noted that the Open Records Act envisions a case-specific approach to determining

whether access to records is appropriate by providing for *de novo* judicial review of agency actions, and requiring that the agency present proof to sustain its action. The Court further stated that "whether an invasion of privacy is 'clearly unwarranted' is intrinsically situational, and can only be determined within a specific context." *Board of Examiners*, 826 S.W.2d at 328. Within these parameters, we turn to the case at hand.

Brandenburg cites Opinions of the Attorney General 91–91 to support denying the release of the tape to Bowling. OAG 91–91 concerned a request by a criminal defendant for any tapes which pertained to his arrest, including recordings of 911 calls. The opinion concluded that access to the tapes had properly been denied because the defendant sought to use the information in his post-conviction proceedings. Therefore, the conviction was not final and the records were exempt pursuant to then KRS 61.878(f) [now (h)],[1] a provision inapplicable here. However, the opinion relied on the reasoning of a previous opinion of the Attorney General's office, OAG 90–117, which held that 911 telephone call recordings are exempt from mandatory disclosure under KRS 61.878(1)(a) and (i). In OAG 90–117, the Attorney General concluded that, under KRS 61.878(a), disclosing a caller's identity by providing a copy of the tape constituted an unwarranted invasion of personal privacy which was not outweighed by the public's right to information. Further, the opinion reasoned that KRS 61.878(i), which exempts "correspondence with private individuals," supported denying the release of 911 tapes.

We agree with the rationale of the Attorney General in concluding that in this case, the recording of the 911 tape is not required to be released.

1. Subsections (h) and (i) of the current version of KRS 61.878, under the version of the statute in effect at the time these opinions of the Attorney General were issued, were denominated as subsections (f) and (g), respectively. For the purposes of this opinion, we will refer to the statute in its current form.

The 911 telephone call by the distressed caller was essentially a complaint of potential spouse abuse which initiated a response or investigation by the police. However, this oral allegation or complaint did not result in a final written report or decision because no crime was committed and therefore no report made.

OAG 90–117. We are faced with virtually the same situation here. Bowling claims that he wants the tape for only two reasons: to make certain that the caller was indeed his grandson, and to make certain that the police officers had not misunderstood the alleged threats that had been made. But his first stated reason is precisely why the Act exempts calls of a personal nature and correspondence with private individuals, in this instance, to prevent the disclosure of a 911 caller's identity.

*Zink v. Commonwealth,* Ky.App., 902 S.W.2d 825 (1994), following the *Board of Examiners* standard, stated that upon a finding that the sought-after information was of a personal nature, the analysis proceeds to a determination of whether public disclosure constitutes a clearly unwarranted invasion of personal privacy. "This latter determination entails a 'comparative weighing of antagonistic interests' in which the privacy interest in non-disclosure is balanced against the general rule of inspection and its underlying policy of openness for the public good." *Zink,* 902 S.W.2d at 828. The competing interests here are the 911 caller's right to privacy when seeking police assistance versus the public's right to know about the conduct of government agencies.[2] Releasing the tapes of 911 calls seeking police assistance, particularly in instances of domestic violence, would have a chilling effect on those who might otherwise seek assistance because they would become subject to, as the trial judge in this case noted, retaliation, harassment, or public ridicule.

In addition, the call resulted in only a minimal intrusion upon Bowling. As previously noted, the officer went to Bowling's home, inquired about the safety of the individuals in the home, and left. In this case, the public's right to know the contents of the 911 tape recording must give way to the legitimate privacy interests of those calling 911 to seek police assistance.

Finally, we note that the federal authority cited by Bowling in his brief to this Court concerns the various federal circuits' interpretation of the federal Privacy Act and the Freedom of Information Act, neither of which parallels the Kentucky Open Records Act. While the cases he cites may lend guidance, the standard we will apply to the interpretation of a Kentucky statute is that previously set forth by our Supreme Court and this Court in *Board of Examiners, supra,* and *Zink,* supra.

The judgment of the Madison Circuit Court is affirmed.

ALL CONCUR.

---

2. Despite Bowling's assertions to the contrary, the release of the tape under the Open Records Act, even to the subject of the call, would constitute a "public disclosure." Bowling's attempt to characterize this as a "private disclosure" is without merit and runs counter to the meaning of the Open Records Act itself.