Jeffrey PALMER, Appellant,

v.

Lisa DRIGGERS; Mark Lee; Owensboro Messenger–Inquirer, Inc.; and the City of Owensboro, Kentucky, Appellees,

and

Owensboro Messenger–Inquirer, Inc., Cross–Appellant,

v.

Jeffrey Palmer; Lisa Driggers; Mark Lee; and the City of Owensboro, Kentucky, Cross–Appellees.

Nos. 2000–CA–002231–MR, 2000–CA–002308–MR.

Court of Appeals of Kentucky.

Nov. 16, 2001.

■■■■■■■■■■■■■■■■■■■■■■

Michael T. Lee, Owensboro, KY, Brief and Oral Argument for Appellants/Cross–Appellees.

Ralph W. Wible, Owensboro, KY, Brief for Appellee/Cross–Appellant, Owensboro Messenger–Inquirer, Inc.

Before GUIDUGLI, HUDDLESTON and JOHNSON, Judges.

*OPINION*

JOHNSON, Judge:

Jeffrey Palmer, a former police officer for the City of Owensboro, Kentucky, has appealed from a partial summary judgment entered by the Daviess Circuit Court on August 22, 2000, which pursuant to Kentucky's Open Records Act allowed Owensboro Messenger Inquirer, Inc., to obtain copies of certain police department records pertaining to a disciplinary action taken against him. Owensboro Messenger Inquirer, Inc., has cross-appealed from the same partial summary judgment claiming that the trial court erred by redacting certain information from the released documents. Having concluded that the records are not exempt from disclosure as claimed by Palmer and that the redacting of certain information was in error, we affirm in part, reverse in part and remand.

On April 19, 2000, Matthew Francis, a reporter for the *Messenger–Inquirer*, an Owensboro newspaper, made an Open Records request to the City of Owensboro. Francis requested that the City allow him to inspect various documents pertaining to possible investigations and disciplinary actions related to employees of the Owensboro Police Department. The City of Owensboro provided copies of certain documents and declined to disclose other documents which had been requested.

On June 7, 2000, police officers Lisa Driggers, Mark Lee, and Palmer filed in the Daviess Circuit Court a petition for nondisclosure and exemption from the Open Records Act. In response, the newspaper asked the circuit court judge to review the records *in camera* pursuant to KRS[1] 61.882(3). After reviewing the records and considering the parties' written and oral arguments, the trial court entered its partial summary judgment where it found that a formal disciplinary complaint had been filed against Palmer; that as a result of the complaint the Owensboro City Commission began a formal hearing that was closed at Palmer's request; on the second day of the hearing, Palmer indicated that he would submit his resignation, and the disciplinary proceeding immediately ended; on April 18, 2000, Palmer submitted his letter of resignation;[2] neither Palmer's letter of resignation nor the written charges against him incorporated any of the investigative documents in the City's files; an exhibit which was attached to the written charges contained communications of a private nature involving third parties and was evidentiary in nature and not an essential part of the complaint; and all other information received by the court, except for the complaint and letter of resignation, related to matters which were not final at the time of the Open Records request. The trial court ordered that a redacted copy of the complaint against

---

1. Kentucky Revised Statutes.

2. The letter of resignation merely stated: "This letter is to confirm that I am voluntarily resigning my position as Police Officer, effective March 14, 2000." Palmer does not object to its disclosure.

Palmer be released to the newspaper.[3] These appeals followed.

■ Palmer claims: (1) that the documents requested were exempt from disclosure under the preliminary action exemption to the Open Records Act; (2) that the documents requested were exempt pursuant to the personal privacy exemption contained in the Open Records Act; and (3) that the documents requested were exempt from disclosure by KRS 61.810(1)(f), the Open Meetings Act.

Palmer argues that the documents requested by the newspaper, including the complaint filed with the Owensboro City Commission, relate to "preliminary matters" which are not subject to disclosure pursuant to KRS 61.878(1)(i) and (j), which state:

(i) Preliminary drafts, notes, correspondence with private individuals, other than correspondence which is intended to give notice of final action of a public agency;

(j) Preliminary recommendations, and preliminary memoranda in which opinions are expressed or policies formulated or recommended[.]

In *City of Louisville v. Courier Journal & Louisville Times Co.,*[4] this Court held that "Internal Affairs" are exempt from public inspection. The Court stated:

We do not find that the complaints *per se* are exempt from inspection *once final action is taken.* Inasmuch as whatever final actions are taken necessarily stem from them, they must be deemed incorporated as a part of those final determinations. We acknowledge that it is possible that these complaints could be afforded continuing exemption under subsection (g) relating to preliminary

correspondence with private individuals; however, that determination would be made upon consideration of the facts on a case-by-case basis and would be dealt with under KRS 61.878(3): "If any public record contains material which is not excepted under this section, the public agency shall separate the excepted and make the nonexcepted material available for examination" [emphasis added].

In *Kentucky State Board of Medical Licensure v. Courier–Journal & Louisville Times Co.,*[5] this Court clarified its position by holding that the exemption would not extend to the complaints which initially spawned the investigation. The Court stated:

It is beyond contention that complaints which "initially spawned" any investigations of Kentucky physicians may not be excluded because the public "has a right to know what complaints have been made." It is clear then that the trial court was correct in ruling that once final action is taken by the Board, the initial complaints must be subject to public scrutiny. The Board's attempt to categorize complaints as formal public complaints and private individual complaints has no bearing on whether such complaints must be released. Inasmuch as final actions stem from the complaints, they must be incorporated as part of the final determination and are therefore not exempt under KRS 61.878(1)(g) or (h) [now (i) and (j) ] [citations omitted].

Palmer does not argue that the complaint filed against him could not be disclosed under KRS 61.878(1)(i) and (j) and *Kentucky State Board of Medical Licensure,* but instead argues that no "final

---

**3.** The redacted complaint has not been released pending this appeal.

**4.** Ky.App., 637 S.W.2d 658, 659–60 (1982).

**5.** Ky.App., 663 S.W.2d 953, 956 (1983).

action" was ever taken by the Owensboro City Commission. In his brief, Palmer states:

> In this case, the final decision maker, the Owensboro City Commission, made no final decision and took no final action regarding the discipline of Officer Palmer. Officer Palmer resigned from the Owensboro Police Department on the second day of his hearing before the Owensboro City Commission. The commission took no action with respect to the resignation and never ruled on the merits of the charge. The city commission certainly never incorporated any documents into any final action that the commission took in this case. Nor can it be said that the letter of resignation incorporated any documents produced to or by the City of Owensboro.

Palmer correctly states that whether his resignation constitutes "final action" is an issue of first impression in Kentucky. However, we believe that to accept his argument that since his resignation came before the Commission had an opportunity to make a ruling, the resignation somehow negated any "final action" from occurring in the case defies common sense. Black's Law Dictionary [6] defines "final" as:

> Last; conclusive; decisive; definitive; terminated; completed. As used in reference to legal actions, this word is generally contrasted with 'interlocutory.' For res judicata purposes, a judgment is 'final' if no further action by court rendering judgment is required to determine matter litigated.

■ Although Kentucky's courts have not addressed the issue of whether a resignation constitutes "final action," there have been several Opinions of the Attorney General that have dealt with this issue.

Although this Court does not have to follow Opinions of the Attorney General, they have been considered "highly persuasive." [7]

In Ky OAG 85–147, the Attorney General was faced with a situation where several complaints were filed against a psychologist and the Board was preparing to proceed against the psychologist when he resigned and his case was dismissed. A newspaper asked to inspect copies and/or have access to all documents regarding the psychologist. The Attorney General ruled:

> In the situation here, however, while the Board has received several complaints concerning the activities of a former licenced psychologist and while the Board itself prepared complaints against that person and scheduled a hearing relative to those matters, no final action has been taken on those complaints. The former psychologist submitted a resignation from the practice of his profession and tendered his license to practice his profession *before* any hearing relative to the complaints was ever conducted and *before* any action was taken by the Board pertaining to those complaints. While those documents were accepted with conditions attached nothing associated with their acceptance involved a final decision or final action concerning the complaints [emphasis original].

However, in a more recent Open Records Decision, the Attorney General ruled in an unpublished opinion that resignation constituted the final action of the agency. In 00–ORD–107, the Attorney General stated:

> In his response to the letter of appeal, Mr. McMillan indicated that the Strike Force's investigation did not determine

---

6. 629 (6th ed.1990).

7. *York v. Commonwealth,* Ky.App., 815 S.W.2d 415 (1991).

the allegations to be true, but that it did accept the resignation of the Executive Director. Apparently, as a result of the resignation, no final action was taken on the investigation, such as the issuance of a final report. The fact that the agency decided to take no further action on the complaint or that the investigation was preempted by the resignation, in our view, indicates that the 'final action' of the agency was to take 'no action' on the complaint.

██ We believe that it is only logical to conclude that a resignation from a position by an employee before the Commission has reached a decision concerning possible termination is a "final action." The effect of Palmer's resignation was to end the City's disciplinary proceedings against him. The subsequent decision of the Commission to end the hearings against Palmer constituted its "final action." Obviously, if the City had proceeded with the disciplinary proceedings after Palmer's resignation when nothing further could be gained, since he had already terminated his own employment, the Commission would have been wasting government resources. We must assume that all the parties proceeded logically and recognized that Palmer's resignation was the final action to be taken.

Next, Palmer argues that the documents requested by the newspaper were exempt from disclosure under the personal privacy exemption contained in KRS 61.878(1)(a). This section exempts from disclosure:

Public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy[.]

Palmer argues that the complaint contains information of personal, private matters which, if disclosed, would constitute an invasion of his privacy. He claims that there is no purpose in disclosing the information other than to quench the public's curiosity. To support his argument, Palmer cites this Court to *Kentucky Board of Examiners of Psychologists & Division of Occupations & Professions, Dept. for Administration v. Courier–Journal & Louisville Times Co.*[8] In that case, the newspaper brought an action under the Act seeking disclosure of complaints by clients to the Board about an alleged act of sexual misconduct. Rejecting disclosure, the Supreme Court of Kentucky stated:

A plain reading of subsection (1)(a) reveals an unequivocal legislative intention that certain records, albeit they are "public," are not subject to inspection, because disclosure would constitute a clearly unwarranted invasion of personal privacy [footnote omitted].[9]

██ However, the Court went on to state that judicial review of a disclosure decision must be approached on a case-by-case basis:

The language of subsection (1)(a) implies a number of other conclusions as well. First, it reflects a public interest in privacy, acknowledging that personal privacy is of legitimate concern and worthy of protection from invasion by unwarranted public scrutiny. We are therefore spared debate (or deprived of it) on privacy as a matter of natural right or constitutional law. *Second, the statute exhibits a general bias favoring disclosure.* An agency which would withhold records bears the burden of proving their exempt status. KRS 61.882(3). The Act's "basic policy" is to

---

8. Ky., 826 S.W.2d 324 (1992).

9. *Id.* at 327.

afford free and open examination of public records, and all exceptions must be strictly construed. KRS 61.882(4), *supra. Third, given the privacy interest on the one hand and, on the other, the general rule of inspection and its underlying policy of openness for the public good, there is but one available mode of decision, and that is by comparative weighing of the antagonist interests. Necessarily, the circumstances of a particular case will affect the balance.* The statute contemplates a case-specific approach by providing for de novo judicial review of agency actions, and by requiring that the agency sustain its action by proof. Moreover, the question of whether an invasion of privacy is "clearly unwarranted" is intrinsically situational, and can only be determined within a specific context [emphasis added].

The public's "right to know" under the Open Records Act is premised upon the public's right to expect its agencies properly to execute their statutory functions. In general, inspection of records may reveal whether the public servants are indeed serving the public, and the policy of disclosure provides impetus for an agency steadfastly to pursue the public good.[10]

■ The first step in our analysis under KRS 61.878(1)(a) must begin with a determination as to whether the information in question is of a "personal nature." If we find that it is, then we must determine whether public disclosure "would constitute a clearly unwarranted invasion of personal privacy." This latter determination entails the comparative balancing of interests as discussed in *Kentucky Board of Examiners of Psychologists.*[11]

■ In *Lexington–Fayette Urban County Government v. Lexington Herald–Leader Co.,*[12] the Supreme Court analyzed the decisions examining KRS 61.878(1)(a) and stated:

The foregoing decisions establish certain points which are noteworthy in this case. Of primary concern is the nature of the information which is the subject of the requested disclosure; whether it is the type of information about which the public would have little or no legitimate interest but which would likely cause serious personal embarrassment or humiliation. The Court had no difficulty concluding in *Board of Examiners of Psychologists* that information which would have revealed the identities of persons who had been sexually victimized should not be produced. In *Zink* the information sought did not implicate any significant public interest but did transgress, albeit not greatly, upon the privacy of the subject individuals. *Beckham [v. Board of Ed. of Jefferson County,* 873 S.W.2d 575 (Ky.1994)] held that privacy rights may extend to citizens who are not parties to the Open Records request but who would be substantially affected by the disclosure.[13]

■ In the case *sub judice,* we hold that the public has a legitimate interest in the information sought by the newspaper. Unlike *Zink* and *Kentucky Board of Examiners of Psychologists,* the information sought by the newspaper in the present case does not contain information concerning an innocent, private citizen. In fact, the only parties that would have standing to argue that the information contained in

10. *Id.* at 327–28.

11. *Zink v. Commonwealth of Kentucky, Department of Workers' Claims, Labor Cabinet,* Ky.App., 902 S.W.2d 825 (1994).

12. Ky., 941 S.W.2d 469 (1997).

13. *Id.* at 472.

the complaint is embarrassing or humiliating to them would be Palmer and Driggers.

We believe the complaint against Palmer presents a matter of unique public interest. At the time of the complaint, Palmer was an Owensboro police officer, who was sworn to protect the public. The complaint charged specific acts of misconduct by Palmer while he was on duty. Since the question of the disclosure of the details of this alleged misconduct is the reason for this appeal, we will generally describe the alleged misconduct as Palmer neglecting his duty to the public by having an inappropriate relationship with another police officer while on duty. We believe the public has a legitimate interest in knowing the underlying basis for a disciplinary charge against a police officer who has been charged with misconduct under KRS 95.450. While the allegations of misconduct by Palmer are of a personal nature, we hold that the public disclosure of the complaint would not constitute a clearly unwarranted invasion of Palmer's personal privacy.

 Palmer's final claim of error is that the information sought by the newspaper was exempted from disclosure by KRS 61.810(1)(f), the Open Meetings Act, which provides:

(1) All meetings of a quorum of the members of any public agency at which any public business is discussed or at which any action is taken by the agency, shall be public meetings, open to the public at all times, except for the following:

. . .

(f) Discussions or hearings which might lead to the appointment, discipline, or dismissal of an individual employee, member, or student without restricting that employee's, member's, or student's right to a public hearing if requested. This exception shall not be interpreted to permit discussion of general personnel matters in secret.

Palmer argues that the exemption under KRS 61.810(1)(f) must be applied to his case through KRS 61.878(1)(*l*), which exempts from disclosure under the Open Records Act:

Public records or information the disclosure of which is prohibited or restricted or otherwise made confidential by enactment of the General Assembly.

Palmer correctly points out that this is an issue of first impression in this jurisdiction. He argues that if the documents in his case are not exempted from disclosure under the Open Records Act, the purpose of having a closed meeting under the Open Meetings Act would be defeated. For support of his argument, Palmer relies upon an Opinion of the Attorney General, Ky OAG 78–11, where the *Courier Journal* was denied access to documents that included: (1) a copy of a transcript from a disciplinary hearing conducted by Internal Affairs of a Louisville police officer; (2) a statement by a witness in the investigation; and (3) two letters which were deleted from the file of the investigation that the police department claimed were included in the file by mistake.

In denying the newspaper access to the information, the Attorney General stated:

The enactment of the General Assembly which we consider makes these documents confidential is that provision in the Open Meetings Statute which provides that closed meetings shall be held for discussions or hearings which might lead to the appointment, discipline or

dismissal of an individual employee. KRS 61.810(6).[14] From the information we have at hand we believe that the Internal Affairs investigation was such a hearing and as such was to be held in a closed meeting unless the person under investigation demanded a public hearing. The purpose of holding such a hearing in closed session would be defeated if the agency were required to make public a transcript of the hearing.

The statute states that the purpose of having a closed session on a disciplinary matter is to protect the reputation of individual persons. In the instant case, the opening of the requested documents to the public could possibly affect not only the reputation of the person being investigated but also the reputation of one or more of the witnesses in the investigation.

We believe that the present case differs significantly from Ky OAG 78–11 since in the present case the information sought is the complaint that led to the disciplinary hearing. In Ky OAG 78–11 the information sought was a transcript of the hearing, and statements made by witnesses in the investigation.[15] The Attorney General made it clear that his reasoning in denying the request was based on the fact that the information sought would needlessly subject the reputation of witnesses to public scrutiny. That is not the case here. We have reviewed the complaint against Palmer, and the only people who could have their reputations harmed are the police officers who were accused of neglecting their duties.

We believe KRS 61.810(1)(f) can be reconciled with KRS 61.878(1)(l). It is clear that once there has been a "final action" to a disciplinary proceeding taken by an agency, the complaint that initially spawned that proceeding is subject to public scrutiny.[16]

In its cross-appeal, the newspaper argues that the entire complaint filed against Palmer should be subject to public scrutiny without redaction of names and addresses. Since we have already decided that the complaint itself is not exempt from public scrutiny, we must now decide if the trial court erred by redacting names and addresses from the complaint. Since the trial court's interpretation of the Open Record's Act and its subsequent decision to redact part of the complaint was an interpretation of law, this Court's review of its legal conclusions is de novo.[17] After reviewing the complaint, we hold that no private citizen would be subject to embarrassment or humiliation by its release. In fact, the only names that are redacted are those of police officers who were either allegedly involved in inappropriate conduct with Palmer or involved in the investigation itself as witnesses. Accordingly, the newspaper should have access to a complete copy of the complaint against Palmer.

For these reasons, the partial summary judgment of the Daviess Circuit Court is affirmed in part, reversed in part and this

---

14. Now KRS 61.810(1)(f).

15. However, in that case, as to a portion of the evidence which included a statement by a police officer, the Attorney General went on to state, "[w]e do not believe that a police officer has any right to privacy as to any of his actions while on duty."

16. *Board of Medical Licensure, supra* at 956.

17. *Louisville & Nashville Railroad Co. v. Commonwealth, ex rel. Kentucky Railroad Commission,* Ky., 314 S.W.2d 940, 943 (1958).

matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.