CAPE PUBLICATIONS, d/b/a The Courier–Journal, Appellant,

v.

The CITY OF LOUISVILLE, Appellee.

No. 2002–CA–001659–MR.

Court of Appeals of Kentucky.

Oct. 31, 2003.

Case Ordered Published by Court of Appeals Jan. 9, 2004.

Discretionary Review Denied by Supreme Court Nov. 10, 2004.

Jon L. Fleischaker, Kimberly K. Greene, Ashley C. Pack, Louisville, KY, for appellant.

Irv Maze, Jefferson County Attorney, Stephanie Harris, Lisa A. Schweickart, Assistant County Attorneys, Louisville, KY, for appellee.

Before BARBER, McANULTY and TACKETT, Judges.

## OPINION

BARBER, Judge.

The Appellant, Cape Publications, d/b/a the Courier–Journal ("Courier–Journal"), appeals from a summary judgment of the Jefferson Circuit Court, upholding an open records decision of the Attorney General. We affirm.

On December 6, 2001, the Courier–Journal initiated an appeal to the Office of the Attorney General, seeking review of a denial of "a continuing open records request"[1] to the City of Louisville, Division of Police. Although incident reports had been disclosed for the months of August, September and October 2001, the victims' names and addresses, and the location of the crimes, had been redacted. On appeal, the Courier–Journal maintained that disclosure of this information did not constitute an unwarranted invasion of personal privacy, and that the City's blanket redaction policy was inconsistent with the specific case approach envisioned under Kentucky law.

On December 21, 2001, the City filed a response. In support of its position that the names and other personal information of rape and sexual assault victims were properly redacted under KRS 61.878(1)(a), as an unwarranted invasion of privacy, the City explained that:

> Last year, a representative from the Center for Women and Children, a nonprofit organization, contacted the Louisville Division of Police to express their concern over the release of rape and sexual assault victim's [sic] and addresses being released to members of the

media. She indicated that there were instances where members of the media showed up at the victim's home requesting an interview. These innocent people are victims of a horrific crime and the insensitivity to the loss of their privacy right is a classic example of why victim's [sic] names and addresses should be protected. Victims should not have to choose between reporting a crime and exposing their identity; or keeping silent in order to protect their privacy.

On February 22, 2002, the Attorney General issued 02–ORD–36, concluding that the City of Louisville, Division of Police "may redact the names and addresses of the victims of sexual offenses, the location of the offenses if the offenses occurred in the victim's homes, and the complainants' signatures if the complainant and victim are one and the same. No other redactions are permissible." Recognizing that this represented a significant departure from previous open records decisions, the Attorney General modified any of those decisions to the extent they were inconsistent therewith. Moreover, the Attorney General explained that:

> We continue to ascribe to the view that the Division may not withhold the identities of *all* crime victims as a matter of policy, and believe that the majority of cases will be governed by the rule announced in 96–ORD–115 and 99–ORD–27. Further, we believe that in rare instances, such as where the victim of a sexual offense has "gone public," or other circumstances in which the victim has evidenced a waiver of privacy, that vic-

---

1. The Attorney General's decision notes that the Courier–Journal had not submitted specific written requests for the subject records, but had relied upon an ongoing or continuing request. The Attorney General explained that ongoing or continuing requests are not proper under the law, and that it apparently is the practice of the City of Louisville, Division of Police to place redacted copies of its incident reports at a front desk for anyone to pick up. In the absence of evidence to the contrary, the Attorney General assumed that this is how the Courier–Journal obtained copies.

tim's privacy interests may be subordinate to the public's interest in disclosure. The position we take today is limited to the names and information identifying victims of sexual offense that appear in incident reports. (Emphasis original).

On March 8, 2002, the Courier–Journal filed an action in the Jefferson Circuit Court challenging the Attorney General's opinion. On May 9, 2002, the parties filed cross-motions for summary judgment. At issue was whether the City's policy of redacting identifying information of alleged sexual offense victims falls within the exemption of the Kentucky Open Records Act, KRS 61.878(1)(a).[2] On July 22, 2002, the court entered an Opinion and Order granting summary judgment in favor of the City:

> It is the opinion of this Court, that the City has met its burden of proof that an exemption exists for non-disclosure of a sexual offense victim's personal information. KRS 61.882(3). In *Bloch v. Ribar*, 156 F.3d 673, 685 (6th Cir.1998), the Court explicitly discusses personal sexual matters. It stated that "[c]rimes of sexual violence necessarily include a nonconsensual sexual act. The crime of rape, for example, cannot be separated from the sexual act itself. For this reason, a historic social stigma has attached to victims of sexual violence...." Kentucky ... has rape shield laws in place and advocate groups on behalf of these victims.... [T]he City has established that the information of victims is private information. For this Court to rule otherwise, would cause a "chilling effect" in

discouraging victims of sexual offenses to come forward and report these types of crimes to their local law enforcement agency.

. . . .

Finally, the Court agrees that police incident reports are matters of public interest and are public records. 93–ORD–42, *citing*, OAG 76–443. As a result, the public should be allowed to scrutinize the police to ensure they are complying with their statutory duties. However, the public's knowledge of police compliance should not come at the expense of its citizens who have been victims in sexual offenses.... Therefore, this Court rules that the City has met its burden of proof in establishing that the identifying information concerning victims of sexual offenses is of a private nature and to disclose that information to the public would constitute a "clearly unwarranted invasion of personal privacy." In the context of sexual offense victims, the personal privacy interests of the victim's [sic] clearly tips the balance in favor of their privacy versus the public's need to monitor policy activity.

■ On August 1, 2002, the Courier–Journal filed a notice of appeal to this Court. On appeal, the Courier–Journal asserts that free and open access to public records is the beacon of the Open Records Act, KRS 61.871; that it is uncontroverted the police incident reports are public records, KRS 61.870(2); that in order to withhold information under the privacy exemption, KRS 61.878(1)(a), the City must first prove that a protectable privacy interest

**2.** KRS 61.878(1)(a) provides: The following public records are excluded from the application of KRS 61.870 to 61.884 and shall be subject to inspection only upon order of a court of competent jurisdiction, except that no court shall authorize the inspection by any party of any materials pertaining to civil litigation beyond that which is provided by the Rules of Civil Procedure governing pretrial discovery: Public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy[.]

exists—the information in question must touch upon an intimate and personal feature of one's life. The *Courier–Journal* maintains that the City cannot satisfy its initial burden, because "[t]here is 'nothing intimate or personal,' . . . about rape, sodomy or any other sexual offense" seemingly quoting from *Kentucky Board of Examiners of Psychologists v. Courier–Journal & Louisville Times Co.*[3] Further, the Courier–Journal argues that were the City able to prove that a protectable privacy issue exists, a balancing of the private versus the public interest must be done on a case-by-case basis, rather than to a category of records.

In *Board of Examiners*, the Supreme Court concluded that patient complaints of sexual improprieties by a psychologist contained information of an intimate and personal nature. The Courier–Journal had sought access to the complaint file, under the Open Records Act. The Supreme Court determined that further disclosure of information contained in the public record would, as a matter of law, constitute a clearly unwarranted invasion of personal privacy:

> [T]he information contained in the complaint file is of a personal nature—indeed, of a *very* personal nature—and that disclosure of the remainder of the public record in this case would constitute a serious invasion of the personal

privacy of those who complained against [the psychologist], as well as other former clients involved in the investigation. The information sought touches upon the most intimate and personal features of private lives.[4]

■ Once a protectable privacy interest is established, proper application of the Open Records Act requires a "comparative weighing of the antagonistic interests"—the privacy interest versus the policy of openness for the public good.[5] *Board of Examiners* reminds us "that the policy of disclosure is purposed to subserve the public interest, not to satisfy the public's curiosity."[6]

The Supreme Court examined the nature of the personal privacy interest *in Lexington–Fayette Urban County Government v. Lexington Herald–Leader Co.*[7]:

> Of primary concern is the nature of the information which is the subject of the requested disclosure; whether it is the type of information about which the public would have little or no legitimate interest but which would be likely to cause serious personal embarrassment or humiliation. The Court had no difficulty concluding in *Board of Examiners of Psychologists* that information which would have revealed the identities of persons who had been sexually victimized should not be produced. In *Zink* [8]

3. Ky. 826 S.W.2d 324 (1992).

4. *Id.*, at 328.

5. *Id.*, at 327.

6. *Id.*, at 328.

7. Ky., 941 S.W.2d 469 (1997).

8. *Zink v. Commonwealth*, Ky.App., 902 S.W.2d 825 (1994), dealt with an attorney's attempt to gain full access to workers' compensation injury reports which, by statute, must be filed by an employer when an injury

is reported. The attorney wished to target potential clients. The Department relied upon KRS 61.878(1)(a) in denying the request, because the forms contained detailed information such as the employees address and phone number, date of birth, marital status, wage rate and number of dependents. Applying the analysis in *Board of Examiners*, the Court of Appeals upheld the denial, stating that "information such as marital status, number of dependents, wage rate, social security number, home address and telephone number are generally accepted by society as

] the information sought did not implicate any significant public interest but did transgress, albeit not greatly, upon the privacy of the subject individuals. *Beckham* [[9]] held that privacy rights may extend to citizens who are not parties to the Open Records request but who would be substantially affected by the disclosure.[10]

The Supreme Court noted that "*Beckham* highly valued the personal privacy exclusion and recognized an expansive right of persons who might be affected by the release of governmental information to be heard on their privacy claim."

In *Bowling v. Brandenburg,*[11] a panel of the Court of Appeals upheld a 911 caller's right to privacy when seeking police assistance. "Releasing the tapes of 911 calls seeking police assistance, particularly in instances of domestic violence, would have a chilling effect on those who might otherwise seek assistance because they would become subject to ... retaliation, harassment, or public ridicule."[12]

 We are not persuaded by the Courier–Journals argument that a violent sex crime is no different from any other crime. As the Sixth Circuit recognized in *Bloch v. Ribar,*[13] the crime of rape implicates both a private and a public interest. "Crimes of sexual violence necessarily include a nonconsensual sexual act. The crime of rape, for example, cannot be separated from the sexual act itself."[14] Nor

are we persuaded by the argument that the victim's identity will become public information, in the ordinary course of events. "[I]nformation is no less private simply because that information is available someplace."[15] We cannot agree with the Courier–Journal's contention that the City failed to take into account a situational analysis in redacting the victim's identifying information. The circuit court explained that the case-by-case analysis referred to in *Board of Examiners* "is a determination to be used by the Courts not the City." That is consistent with our interpretation of *Board of Examiners.* "Judicial review of a disclosure decision must be approached on a case-by-case basis."[16]

We conclude that redaction of the victims' names and addresses and other identifying information from the subject police incident reports is proper under KRS 61.878(1)(a). We concur with the Attorney General's analysis:

> [T]he victims of these crimes share a substantial privacy interest in the nondisclosure of their identities.... [P]ostulated on the victims' need to avoid public exposure as they cope with the singularly traumatic physical and psychological consequences of the crimes perpetrated against them, crimes that have been characterized as the 'ultimate violation of self.' [citing] *Coker v. Georgia,* 433 U.S. 584, 597 [97 S.Ct. 2861, 53

details in which an individual has at least some expectation of privacy." *Id.,* at 828.

9. *Beckham v. Board of Education of Jefferson County,* Ky., 873 S.W.2d 575 (1994), held that Board of Education employees had standing to challenge the release of their personnel records on grounds that the release of such information might constitute an unwarranted invasion of personal privacy.

10. *Lexington–Fayette,* at 472.

11. Ky.App., 37 S.W.3d 785 (2000).

12. *Id.,* at 788.

13. 156 F.3d 673 (6th Cir.1998).

14. *Id.,* at 685.

15. *Zink, supra,* at 828.

16. *Palmer v. Driggers,* Ky.App., 60 S.W.3d 591, 597 (2001).

L.Ed.2d 982] (1977) cited in Justice White's dissent in *Florida Star v. B.J.F.*, 491 U.S. 524, 542–43 [109 S.Ct. 2603, 105 L.Ed.2d 443] (1989). Against this substantial interest, we weigh the competing public interest in monitoring the Division's investigative response to the sexual offense reported. While this too is a substantial interest, we do not believe that it outweighs the privacy interests of victims of sexual offenses, particularly when those privacy interests are coupled with a compelling public interest in insuring the physical safety of the victims and encouraging them to report sexual offenses without fear of exposure.

Accordingly, we affirm the Opinion and Order of the Jefferson Circuit Court entered July 22, 2002.

TACKETT, Judge, concurs.

McANULTY, Judge, dissents and files separate opinion.

McANULTY, Judge, dissenting.

While the goal of protecting the privacy of a victim of a sexual offense is laudable, the corresponding danger of allowing government to operate secretly outweighs any possible benefit, in my humble opinion. Our Constitution provides for a presumption of innocence for all individuals accused of a crime. Today, we have created a presumption that a unilateral report is true.

The underpinning of the majority's decision appears to be a need to insulate victims from potentially tasteless journalists who would appear at the doorstep of a sexual abuse victim. The same rationale would apply to protect the family of a homicide victim. Unfortunately, the legislature cannot legislate good taste and we cannot insulate the world from all that is harmful and undesirable. This is especially true in the context of protecting liberty interests.

Section 8 of our Constitution provides:

Printing presses shall be free to every person who undertakes to examine the proceedings of the General Assembly or *any* branch of government, and no law shall ever be made to restrain the right thereof. Every person may freely and fully speak, write and print on any subject, *being responsible for the abuse of that liberty.*

(Emphasis supplied.)

As I believe this policy we authorize today allows the City to conduct its business in contravention of our Constitution, I respectfully dissent.